James W. BARNES, Appellant,

v.

UNITED STATES, Appellee.

No. 90–1582.

District of Columbia Court of Appeals.

Submitted Nov. 26, 1991.
Decided Dec. 18, 1991.

William E. Seals, Washington, D.C., appointed by this court, was on the brief, for appellant.

Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas C. Black, Wanda G. Bryant, and Martin Dee Carpenter, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before TERRY and WAGNER, Associate Judges, and GALLAGHER, Senior Judge.

WAGNER, Associate Judge:

Appellant, James Wesley Barnes, was convicted following a jury trial of one count of indecent acts with a child under the age of sixteen years in violation of D.C.Code § 22–3501(a) (1989). Appellant's primary contention on appeal is that the trial court abused its discretion in finding the minor complainant competent to testify at trial. He also argues that the trial court erred in its instruction to the jury on evaluating a child's testimony. Finding no error, we affirm.

## I.

The minor complainant was a seven-year-old third grader at the time of trial and six years old at the time of the incident out of which the charge against appellant arose. The complainant testified that she lived with her mother and appellant, who had been living with them for approximately one month prior to the incident. On June 7, 1989, while her mother was talking on the telephone in the living room, appellant came into the bedroom, got on top of her, rubbed her vagina with his hand,[1] and asked her if it felt good.[2] The complainant said she remained silent. She recounted that appellant moved about on top of her and told her to move, but she did not respond. The complainant testified that appellant had on underwear at the time and that she was wearing a nightgown, but no underwear.[3] The complainant could not remember whether her nightgown was raised. She testified that appellant did nothing else to her, but he instructed her not to tell her mother. When her mother ended her telephone conversation, appellant got up, dressed, and left the apartment. The complainant attended school that day, but she did not report the incident to anyone there. She waited until after school to inform her mother because she was afraid that appellant would hurt her and her mother if she informed on him.

The child's mother testified that she asked appellant to move in because she felt uncomfortable living alone after her sister moved out. According to the mother's testimony, during the one and one-half month period that appellant lived with her, they slept in the living room on a sofa while the child slept in the bedroom.[4] The mother testified that on June 7, 1989, she got up between 6:30 and 7:00 a.m. and called a friend. Appellant had decided not to go to work. The child's mother testified that while she was in the bathroom talking on the telephone, she saw appellant go into her bedroom; however, she was unaware of what occurred after that. As soon as she completed her call (approximately forty-five minutes later) appellant left the bedroom, put on his work clothes, and left for work.

The mother went to appellant's mother's home that afternoon and left the child there while she went to prepare dinner and attend to other matters. Appellant walked the complainant home from his mother's house about 5:30 or 6:00 p.m. As soon as appellant and complainant entered the apartment, according to her mother, the child began to cry and said, "Mommy, I got to talk to you. Let's go in the bathroom. Let's talk." They went into the bathroom and the child told her what appellant had done that morning. The mother testified that she told appellant that she was going out and that she wanted him to leave her apartment before she returned. She reported the incident to police the following morning.

Detective Geneva Couser, a member of the sex offense branch of the Metropolitan

---

1. The complainant testified that she learned the word vagina when she was two years old when her mother taught her the parts of the body.

2. The complainant used dolls to demonstrate what appellant did.

3. The complainant's mother testified that she does not allow the child to wear underwear to bed.

4. The mother described the home as a one-bedroom apartment, and the child described the apartment as having two bedrooms. However, there was a small room next to the bedroom where the child had a bed and toys.

Police Department, interviewed the complainant and her mother on June 8, 1989. Although the child was present during her mother's interview, Detective Couser was alone with the child when she described the incident in detail. Specifically, the complainant told Detective Couser that appellant lay on top of her and placed his penis beside her vagina, but that he did not expose his penis. Detective Couser testified that she never discussed with the child what she should say in court.

Doctor Michael Aldous, an expert in the field of pediatric medicine, was on duty in the emergency room of Children's Hospital on June 8, 1989, when the mother took the complainant for a medical examination. The complainant recounted the incident with appellant to the doctor, explaining that the man "put his privates by the side of my privates" and that the man was wearing underwear. The doctor testified that a medical examination showed no physical signs of injury or abuse, which was consistent with nothing happening at all and with the child's story.

Appellant, who testified on his own behalf, described a very different sequence of events. He testified that he lived with the complainant's mother from approximately April 1989 until one week after the incident. According to appellant, on June 7, 1989, he and the complainant's mother slept in the bedroom while the child slept on the sofa in the living room. About 7:30 a.m., the child's mother got up to answer the telephone in another room. Appellant said the child awakened him and asked to watch television, and he assented. He testified that the complainant touched him "on a certain part of my body that I don't think a little kid should touch." Appellant said he knew the complainant touched his penis, although he did not see her do it. Appellant said he told the child that he did not know what her mother was teaching her, but that it was wrong and that she had better stop. According to appellant, he asked complainant's mother to cut short her telephone conversation in order to speak with her; however, she continued to converse, and he went to work. That evening, he stopped for groceries on the way

home, and he did not recall going to his mother's house. He prepared dinner when he got home, and they all ate together. Appellant denied the incident as recounted by the complainant.

## II.

Appellant argues that the trial court abused its discretion in finding the minor complainant competent to testify. The trial court's determination of competency of a child witness is a question of law which is committed to its sound discretion. *Smith v. United States*, 414 A.2d 1189, 1197 (D.C. 1980); *accord Robinson v. United States*, 357 A.2d 412, 415 (D.C.1976); *Edmondson v. United States*, 346 A.2d 515, 516 (D.C. 1975). This court will not disturb the trial court's decision unless it is clearly erroneous, recognizing that the trial court has the opportunity to observe the witness' demeanor and conduct at trial. *In re A.H.B.*, 491 A.2d 490, 492 (D.C.1985); *Smith*, 414 A.2d at 1198; *Johnson v. United States*, 364 A.2d 1198, 1202–03 (D.C.1976).

Two requirements must be satisfied before a child witness can be found competent to testify: (1) the child must be able to recall the events which are the subject of the testimony; and (2) the child must understand the difference between truth and falsehood and appreciate the duty to tell the truth. *In re A.H.B.*, *supra*, 491 A.2d at 492. In order to make its determination, the trial court may conduct a *voir dire* in or outside of the jury's presence, with or without the participation of counsel. *Id.* A *voir dire* is not mandatory. *See id.* However, a preliminary examination is appropriate for a child witness of tender years. *United States v. Schoefield*, 150 U.S.App.D.C. 380, 382, 465 F.2d 560, 562, *cert. denied*, 409 U.S. 881, 93 S.Ct. 210, 34 L.Ed.2d 136 (1972).

The trial court conducted a pretrial *voir dire* of the minor complainant here. During the course of the examination, the complainant answered a series of questions about her age, grade, family and school. She responded that she knew the difference between the truth and a lie, and she

said, "it's good to tell the truth," and "it's bad to tell a lie." The complainant demonstrated her recognition of the difference between truth and falsehood in response to questioning about the color of an article. She also testified that she would tell the truth in the courtroom and that she would tell what really happened.

The complainant had difficulty recalling dates during the *voir dire*, although she seemed to be able to relate times to her birthday, the school year or summer vacation and the grade she was in at school. Appellant's trial counsel challenged the child's competency, stating, "it is clear that she doesn't remember what happened." The trial court determined that complainant was competent to testify, and responded to the attorney's comment in this way:

> Well, it is not clear to me, Mr. Seals [defense counsel], as to you. It strikes me that she appreciates that what is her—her objection is, and the difference between telling the truth and not telling the truth, and I'm satisfied that, although youthful and certainly hazy concerning some of the details, that she is competent.

Appellant's primary contention on appeal is that the complainant failed to meet the requirements of the two-part inquiry for competency. The trial court clearly satisfied the second part of the test by finding that the complainant knew the difference between truth and falsehood based on the child's responses to the preliminary examination. While the trial court acknowledged that the child's memory was faulty on some details, he nevertheless found her competent to testify.[5] Notwithstanding, the court's observation that the child was hazy on some details, the court also concluded, at least implicitly, that the child was able to recall details sufficiently to be considered competent to testify.

Moreover, the child's trial testimony supports the trial court's finding of competency. This court may consider the actual trial testimony of the child witness when evaluating whether the trial court's exercise of discretion was clearly erroneous. *In re A.H.B., supra,* 491 A.2d at 492; *Smith, supra,* 414 A.2d at 1198 n. 21; *Edmondson, supra,* 346 A.2d at 516 n. 1; *United States v. Schoefield, supra,* 150 U.S.App.D.C. at 382, 465 F.2d at 562. If the trial transcript reveals that the complainant had an intelligent comprehension in answering questions posed to her, the trial court's finding of competency will be upheld even absent a *voir dire. In re A.H.B.,* 491 A.2d at 492; *Schoefield,* 150 U.S.App.D.C. at 382, 465 F.2d at 562. Here the complainant testified in specific detail to the circumstances surrounding the offense. The minor complainant in this case demonstrated "the requisite intelligence and mental capacity to understand, recall and narrate [her] impressions of [the] occurrence." *Id.* Therefore, we find no abuse of discretion in the trial court's finding of competency. *Schoefield,* 150 U.S.App.D.C. at 382, 465 F.2d at 562 (footnote omitted).

### III.

Appellant finally argues that the trial court erred in instructing the jury on how to evaluate a child's testimony. Specifically, appellant contends that the trial court's modification of the cautionary instruction on a child's testimony substantially decreased the impact of the factor of suggestibility, which is considered in evaluating the testimony of a child witness, and deprived him of his fabrication argument. During a discussion of jury instructions, the government requested that the first two paragraphs of the standard jury instruction on a child as witness be omitted.[6]

---

5. Appellant also argues that during *voir dire* complainant demonstrated an inability to appreciate the necessity to tell the truth because she stated that her mother told her what to say. We find no merit to this contention. The child testified that while her mother discussed the incident with her, she would tell what really happened.

6. Criminal Jury Instructions for the District of Columbia, No. 2.21 (3d ed. 1978). The standard instruction reads as follows:

> A child is not disqualified as a witness merely by reason of his youth. There is no precise age which determines the competency of a child to testify. This depends on the capacity and intelligence of the child, his under-

Indicating that in his experience children are more suggestible than adults, the trial judge denied the request, but proposed the following alternative:

> [I] have an instruction here that alludes to [the fact that children are more suggestible than adults] and in the absence of some expert testimony to the contrary or some research ... I'm prepared to change this instruction; except, I do believe that the second—in the second paragraph, that the language is much stronger than it needs to be. It now reads, "Children are likely to be more suggestive than adults." I have in the past struck "are likely to" and substituted "may" So, it would read, "Children may be more suggestive than adults."

Appellant objected to the modification, but the trial court concluded that the instruction should be changed, reasoning that the standard language was too strong and to some degree usurped the jury's function in evaluating the child witness' testimony. Therefore, the court substituted "may" for "are likely to" in describing the suggestibility of children in paragraph two of the instruction.

We find no error in the trial court's modification of the instruction for these reasons. There is an important distinction between the competency of a child to testify and the assessment of the child witness' credibility. The former is a question of law to be decided by the trial court. *Smith, supra,* 414 A.2d at 1197. The latter is a function for the jury. *Robinson, supra,* 357 A.2d at 415 (the weight to be given the

child's testimony is a "matter for determination by the jury"). The instruction as given fully informed the jury of factors to be considered in evaluating the child witness' testimony and left to their judgment the weight to be accorded each factor, including susceptibility to suggestivity. The child witness instruction was preceded by a general instruction on credibility, and the two instructions sufficiently apprised the jury of the caution with which to view the child's testimony as well as a list of factors pertinent to that assessment. *See Price v. United States,* 531 A.2d 984, 986 (D.C. 1987). Therefore, we find no error in the modified instruction.

Finally, appellant's contention that the trial court's modification of the jury instruction deprived him of his fabrication argument is without merit. Appellant's trial counsel fully explored during cross-examination of the complainant and closing argument whether the child fabricated her testimony or whether other individuals suggested or told her what to say. Appellant had the opportunity to place any evidence on fabrication before the jury.

For the foregoing reasons, the judgment of conviction appealed from hereby is

*Affirmed.*

standing of the difference between truth and falsehood, and his appreciation of his duty to tell the truth.
Children are likely to be more suggestible than adults. Moreover, children may not have a full understanding of the serious consequences of [the testimony they give] [the charges they make]. You should therefore consider the capacity of a child witness to distinguish truth from falsehood and to appreciate the seriousness of his testimony in evaluating that testimony.
As in the case of all other witnesses, you are the sole judges of the credibility of the child

who has testified in this case. In weighing his testimony you may consider not only his age, but his demeanor on the stand; his manner of testifying; his capacity to observe facts; his capacity to recollect them; his ability to understand the questions put to him and to answer those questions intelligibly; whether he impresses you as having an accurate memory and recollection; whether he impresses you as a truth-telling individual; and any other facts and circumstances bearing on his credibility. You should give his testimony such weight as in your judgment it is fairly entitled to receive.