The PEOPLE OF the TERRITORY OF GUAM, Plaintiff–Appellee,

v.

Thomas V. McGRAVEY, Defendant–Appellant.

No. 92–10003.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1992.

Decided Jan. 14, 1994.

Scott R. Grigsby, Agana, Guam, for defendant-appellant.

Robert C. Sacco, Guam, Asst. Atty. Gen., Agana, Guam, for plaintiff-appellee.

Before: BROWNING, NORRIS and REINHARDT, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Appellant Thomas McGravey challenges his convictions for first and second degree criminal sexual assault on the ground that the jury instructions, taken as a whole, misled the jury by directing it to give undue weight to the testimony of the victim, who was a minor.

McGravey identifies two instructions that were given and one proposed instruction that was rejected by the trial court as the basis for his appeal. Because we hold that the jury instructions, viewed in their entirety, did not lead the jury to place a disproportionate emphasis on the testimony of the alleged victim, we affirm.

## FACTUAL BACKGROUND

McGravey was tried before a jury on the charge of sexually molesting his nephew on two separate occasions—first when the child was seven years old and again when the child was nine years old. Since there were no witnesses to the alleged acts, and because neither side offered any corroborating evidence to support its version of the events, the trial boiled down to a pure credibility contest between the defendant and the alleged victim, who was then ten years old.

At trial, McGravey objected unsuccessfully to two separate jury instructions. The first instruction he challenged stated:

The testimony of a victim of criminal sexual conduct need not be corroborated if the victim is believed beyond a reasonable doubt.

This instruction was patterned after 9 Guam Code Annotated § 25.40, which provides that a victim's testimony need not be corroborated in prosecutions for sexual offenses. The second instruction he challenged stated:

The court shall allow a support person to be present during a child-victim's testimony. No prejudice exists because of that presence.

This instruction was taken verbatim from 8 Guam Code Annotated § 75.80.

Finally, McGravey proposed the following instruction regarding the testimony of child witnesses, which the trial court rejected:

A child is not disqualified as a witness simply by reason of his youth. There is no precise age which determines a child's competency. This depends on his capacity and intelligence, on his understanding of the difference between truth and falsehood, and on his appreciation of his duty to tell the truth.

As with all other witnesses, you are the sole judge of the credibility of a child who testifies. You may consider not only his age but his demeanor on the stand, his capacity to observe facts and to recollect them, his ability to understand questions put to him and to answer them intelligently, whether he impresses you as having an accurate memory and recollection, whether he impresses you as a truth-telling individual, and any other facts and circumstances which impress you as significant in determining his credibility. On the basis of your consideration you may give the child's testimony such weight as you in your judgment think it is entitled to.

Children are likely to be more suggestible than adults. Moreover, children may not have a full understanding of the serious consequences of the testimony they give and the charges they make. You should therefore consider the capacity of a child witness to distinguish truth from falsehood and to appreciate the seriousness of his testimony in evaluating the testimony.

This instruction was taken from 1 Devitt & Blackmar, *Federal Jury Practice and Instructions*, § 17.17 (3rd ed. 1977).

Following his conviction on both counts, McGravey appealed to the Appellate Division of the District Court of Guam, raising all three of his challenges to the jury instructions. The Appellate Division affirmed McGravey's convictions. Our review of the Appellate Division's ruling is de novo. *Guam v. Yang*, 850 F.2d 507, 511 (9th Cir. 1988) (en banc).

### STANDARD OF REVIEW

■ In reviewing jury instructions, "[o]ur inquiry is whether the jury instructions as a whole are misleading or inadequate to guide the jury's deliberations." *United States v. Joetzki*, 952 F.2d 1090, 1095 (9th Cir.1991). The trial judge has substantial latitude in formulating jury instructions so long as the instructions fairly and adequately cover the issues presented. *United States v. Powell*, 955 F.2d 1206, 1210 (9th Cir.1992). Jury instructions, even if imperfect, are not a basis for overturning a conviction absent a showing that they constitute an abuse of the trial court's discretion. *Joetzki*, 952 F.2d at 1095.

### I. THE NON-CORROBORATION INSTRUCTION

■ Appellant contends that the non-corroboration instruction—that no corroboration of the victim's testimony is necessary if the victim is believed beyond a reasonable doubt—erroneously implied that the jury was to evaluate the testimony of the victim differently, and indeed more favorably, than that of any other witness—particularly the accused.

Appellant's objection is not to the substance of this instruction, but to the fact that the court gave no analogous instruction with regard to the defendant's testimony. His contention is that by specifying that the jurors may believe the alleged victim's testimony without corroboration—but saying nothing of the sort about the defendant's testimony—the instruction led the jurors to believe that the defendant's testimony was unworthy of belief unless it was corroborated by other evidence. The upshot, he argues, was to "shift[ ] the burden of persuasion to the defendant ... by requiring him to produce corroborative evidence of his innocence." Defendant–Appellant's Opening Brief at 7. We disagree.

■ A single instruction may not be judged in artificial isolation, but must be viewed in the context of the overall charge. *United States v. Marsh*, 894 F.2d 1035, 1040 (9th Cir.), *cert. denied*, 493 U.S. 1083, 110 S.Ct. 1143, 107 L.Ed.2d 1048 (1990). When the non-corroboration instruction is reviewed in context, it becomes clear that the jurors were not misled into believing they were to attach any special weight to the testimony of the alleged victim. In fact, quite to the

contrary, the judge gave numerous instructions which made it plain to the jury that it was to treat the testimony of the alleged victim no differently from the testimony of any other witness. For instance, he instructed the jurors that they were "the sole judges of the credibility of the witnesses and the weight their testimony deserves," and he explained the factors that the jurors should consider in evaluating the testimony of each of the witnesses brought before them.[1] Moreover, he stated that they "may disbelieve all or any part of any witness' testimony," and that it was important for them to evaluate "the extent to which, if at all, each witness is either supported or contradicted by other evidence." The jury was explicitly told to "judge the testimony of the defendant just as you [would] judge the testimony of any other witness." And finally, the jury was admonished that "[t]he weight of the evidence presented by each side does not necessarily depend on the number of witnesses testifying on one side or the other. You must consider all the evidence in the case, and you may decide that all the testimony of a smaller number of witnesses on one side has a greater weight than that of the larger number on the other." In light of

these instructions, we think that no reasonable juror would believe that the testimony of the alleged victim was entitled to any special deference.

Nor would a reasonable juror have believed that the defendant was required to produce corroborating evidence in support of his testimony. In his instructions to the jury, the trial judge properly emphasized that the defendant was entitled to a presumption of innocence, and that the burden was on the government to prove its case beyond a reasonable doubt.

In sum, the combined effect of these instructions was to make clear that the testimony of each witness was to be judged by the same standard. Hence, in light of the entirety of the instructions given, we hold that the trial court did not err by giving the non-corroboration jury instruction.[2]

## II. THE SUPPORT PERSON INSTRUCTION

■ Appellant next argues that the support person instruction was improper because it used the phrase "child-victim" rather than "child witness."[3] He claims that the

---

1. The jury was instructed to keep the following considerations in mind when evaluating the weight of testimony it had heard:

   You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, *and every matter in evidence which tends to show whether a witness is worthy of belief.* Consider each witness' intelligence, motive and state of mind, and demeanor and manner while on the stand. Consider the witness' ability to observe the matters as to which he or she has testified, and whether he or she impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; *and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.*
   (emphasis added).

2. Our decision today accords with the rule previously set forth by the Appellate Division of the District Court of Guam in *Guam v. Welch,* No. 90–00008A, 1990 WL 320365 (D. Guam App.Div. Oct. 30, 1990), that "a reviewing court examines a challenged jury instruction in the context of the instructions as a whole ... [to determine whether it] unduly call[s] attention to the victim's testimony." *Id.* at *1. Both appellant and the dis-

sent rely on California cases to argue that the trial court erred. However, California caselaw is beside the point because there is no evidence that the sexual abuse statute or the non-corroboration instruction was based on California law. *See Tabor v. Ulloa,* 323 F.2d 823, 824 n. 5 (9th Cir.1963) ("Decisions of the California court subsequent to the adoption of the Code by Guam are not binding, but are persuasive of the construction to be given provisions in the Code of Guam *borrowed from the California Code.*") (emphasis added). The government argues that the trial court's decision to give the non-corroboration instruction was not erroneous because Guam's non-corroboration statute does not track California law, but rather is identical to a Michigan statute and the Michigan court of appeals has approved such a non-corroboration instruction. *See People v. Smith,* 149 Mich.App. 189, 385 N.W.2d 654, 657 (1986). Although there is no evidence that Guam consciously followed Michigan law, the fact that Michigan courts have approved a similar instruction has some persuasive force.

3. The support person instruction stated: "The court shall allow a support person to be present during a child-victim's testimony. No prejudice exists because of that presence." *See* 8 G.C.A. § 75.80.

use of this phrase improperly singled out the victim apart from all other witnesses and prejudiced his defense. This claim lacks merit.

The trial court was careful to define its use of the term "victim" so as to avoid the possibility of confusion or prejudice. Indeed, the court stated explicitly that "[a] 'victim' is defined or means the person whom the defendant *allegedly* subjected to criminal sexual conduct" (emphasis added). This definitional instruction was an adequate safeguard against any potential prejudice that might conceivably flow from the use of the word "victim."

## III. THE CHILD WITNESS INSTRUCTION

■■■ Appellant also argues that the trial court erred in refusing to give his requested jury instruction stressing the suggestibility of children. He contends that the instruction was particularly necessary here because it went directly to his defense theory—namely, that the child's mother coerced him into fabricating these accusations against the defendant as a result of a bitter feud between the child's mother and appellant.

We decline appellant's invitation to establish as the law of Guam a rule requiring the trial court to give a special child witness instruction when a child testifies in a sexual abuse case. We know of not a single jurisdiction that has adopted the view taken by appellant and the dissent. *See Connecticut*

*v. James,* 211 Conn. 555, 560 A.2d 426, 433–35 (1989) (overruling case requiring such an instruction and collecting cases).[4] All jurisdictions that have considered the matter either prohibit such an instruction, *see, e.g., Lewis v. Indiana,* 264 Ind. 288, 342 N.E.2d 859, 864 (1976) (murder conviction), or entrust the matter to the trial court's discretion. *See, e.g., California v. Thomas,* 20 Cal.3d 457, 470–71, 143 Cal.Rptr. 215, 573 P.2d 433 (1978). We think the better view is the "prevailing view," that "a trial judge retains discretion to determine whether the jury should receive a special instruction with respect to the credibility of a young witness, and if so, the nature of that instruction." *Massachusetts v. Avery,* 14 Mass.App.Ct. 137, 437 N.E.2d 242, 245 (1982). Such a view accords with the federal rule that the trial court has discretion to comment on evidence as long as it makes clear that the jury must ultimately decide all questions of fact for itself. *See United States v. Sanchez–Lopez,* 879 F.2d 541, 553 (9th Cir.1989).

In this case, the trial judge refused to give a special child witness instruction, relying instead on the general credibility instructions. We hold that the trial judge did not abuse his discretion in doing so.[5] Appellant's defense at trial was that the ten-year old child was lying and that his mother put him up to it as part of a vendetta against her brother, the defendant. Appellant had the opportunity to cross-examine the child and to present testimony in support of his theory of the case. He also could have, but did not,

---

4. We also note that the dissent's premise—that children are more suggestible than adults and are thus less likely to testify accurately—is not an undisputed scientific fact. Psychological studies have failed to reach a consensus on this question. *See James,* 560 A.2d at 434–35 (citing studies questioning the conventional wisdom that children are less likely to be truthful on the witness stand than adults and that children are less capable of distinguishing real from imaginary events); *see also* Marc Lindberg, *An Interactive Approach to Assessing the Suggestibility and Testimony of Eyewitnesses,* in *The Suggestibility of Children's Recollections* 48 (John Doris ed., 1991) ("[T]here is not a sound theoretical taxonomy that can organize the data on the development of suggestibility in memory performance. All we know is that under different conditions, children's memories are sometimes more suggestible, in others, less suggestible, and in still others, they do not differ from adults."). Because the question of

whether children are more suggestible than adults is controversial in the psychological community, requiring a standard child witness instruction in all cases that hinge on a child's credibility would be inappropriate.

5. The dissent argues that the trial judge's discretion was improperly influenced by Ninth Circuit Model Jury Instruction 4.14, which recommends against giving a special credibility instruction whenever a child testifies. Dissent at 401–402. As the dissent acknowledges, however, a model jury instruction does not constitute the law of the circuit, but is simply advisory. The mere fact that the trial judge considered the suggestion of the advisory committee does not mean that he committed a clear error of judgment. On the record of this case, the trial court's decision not to require a special child witness instruction is not a basis for reversing the conviction.

present expert testimony on the issue of sexual abuse of children or the susceptibility of children to suggestion. By the close of trial, the issue for the jury was clear: one of the two, the child or the appellant, was not telling the truth. The proffered child witness instruction would have added nothing to the jury's ability to understand and evaluate appellant's defense or to evaluate the credibility of the child vis-a-vis the defendant. The essential point of such an instruction—that the jury should carefully scrutinize the credibility of the witnesses and their testimony—was adequately conveyed to the jury by the general witness credibility instructions. The only possible effect of appellant's proposed instruction would have been to undermine the believability of the child's testimony by "denigrat[ing] a child as usually less worthy of belief than an adult." *James,* 560 A.2d at 435.[6]

We agree with the dissent that the consequences of an erroneous verdict in a case involving the alleged sexual abuse of a child are grave and that courts must exercise great care in trying to assure that justice is done in every case. We simply disagree that the solution lies in *requiring* special jury instructions stressing the susceptibility of children to suggestion. Such courtroom weapons as cross-examination, contradictory evidence, evidence that a witness has been influenced by others, and argument are the time-honored methods of educating a jury on issues of credibility. We leave it to the sound discretion of the trial judge to determine whether the ends of justice would be served by supplementing these methods with an instruction commenting on the credibility of a particular child witness.

The decision of the Appellate Division of the District Court of Guam is AFFIRMED.

REINHARDT, Circuit Judge, dissenting:

I.

Wherever the truth may lie, this case represents a family tragedy. It may also constitute a grave injustice. Allegations of sexual misconduct by one family member against another pose exceptional difficulties for the judicial system. In many instances, no one but the alleged perpetrator and the alleged victim is able to testify regarding what did or did not happen. The cases are exceedingly troublesome for all concerned, including judges and jurors. On the one hand, we are becoming increasingly aware of the frequency with which sexual abuse occurs and remains hidden. On the other, we have learned, painfully, that the passions and pressures that can arise within a family sometimes cause troubled individuals to make false accusations. Judges and juries must make decisions with the gravest consequences for the lives of those involved on the basis of limited information, the reliability of which is often open to serious question.

These problems are especially pronounced where the alleged victim is a child. The sexual molestation of children is unfortunately just a facet of child abuse in general, a facet that appears to represent an all too common phenomenon. While the difficult problem of determining whether the victim of alleged sexual misconduct consented to the act involved does not arise in cases involving children, other unique complications exist. Some studies show that young children are more vulnerable to suggestion than adults and that when describing past "events" they are often unable to separate fantasy from reality. *Maryland v. Craig,* 497 U.S. 836, 868, 110 S.Ct. 3157, 3175, 111 L.Ed.2d 666 (1990) (dissenting opinion of Justice Scalia joined by Justices Brennan, Marshall, and

---

6. The dissent makes much of the fact that the child in this case had in the past lied to protect his mother, the very person who defendant alleges induced him to testify about the instances of sexual abuse. Dissent at 402. It is unclear why this fact requires a special jury instruction about the suggestibility of children generally, especially since the defendant cross-examined both the child and his mother and argued to the jury that the child had previously lied. The dissent also analogizes child witnesses to government inform-

ers and individuals granted immunity from prosecution, arguing that there is "at least as compelling a reason for a cautionary instruction pertaining to child witnesses in sexual molestation cases." Dissent at 400. We cannot agree. A juror may never have encountered an informer before and is likely to be unversed in the types of agreements informers make with the government and the incentives that such agreements create. Children and their behavior, by contrast, are hardly foreign to the typical juror.

Stevens) (citing Lindsay & Johnson, *Reality Monitoring and Suggestibility: Children's Ability to Discriminate Among Memories from Different Sources*, in Children's Eyewitness Memory 92 (S. Ceci, M. Toglia & D. Ross eds. 1987); Christiansen, *The Testimony of Child Witnesses: Fact, Fantasy, and the Influence of Pretrial Interviews*, 62 Wash.L.Rev. 705, 708–11 (1987)); *see also* Cohen & Harnick, *The Susceptibility of Child Witnesses to Suggestion*, 4 Law & Hum.Behav. 201 (1980).[1] Children are also more susceptible to manipulation than are adults—particularly by their parents and others in positions of authority or trust. In some cases a molester may use this weakness to his or her advantage and try to keep the truth from coming out. However, in others, the result may be that an innocent person is falsely labelled a molester. Some of the investigative techniques experts use to bring the facts of child molestation to light can themselves be a source of unreliability if not properly employed.[2] The unfortunate fact is that, because of their greater suggestibility, young children sometimes testify to events that never happened.

If courts make the wrong decisions in child molestation cases, the consequences are horrendous. In civil cases judges are frequently called upon to decide whether a child should be taken away from a parent. Leaving the child in the custody of a molester may damage the child irreparably. More and more, we are finding that persons who commit egregious crimes when they are adults were themselves the victims of child abuse, frequently at the hands of one or both of their parents. The pattern is self-perpetuating. However, depriving a child of a parent, and a parent of a child on the basis of false charges manufactured by a vindictive third-party is among the cruelest and most unjust acts society can perform. In criminal cases, the consequences are at least as drastic. The defendant's life is ordinarily ruined as the result of a conviction, and the risks to his physical well-being if he is incarcerated are significant. Even hardened criminals do not readily tolerate child abusers. Yet, an acquittal of a guilty person will in many cases mean that the abuser will resume abusing his or her victim, and possibly other children as well.

Because the consequences of an erroneous decision are so grave, courts must exercise the greatest possible care in their efforts to reach the correct decision in child molestation cases. There is a particular duty imposed on courts—if only by virtue of the state's special obligation to children—to use every appropriate technique to ensure that the truth is ascertained. Under some circumstances, this may involve providing for psychological or physical examinations of the child or the alleged molester at public ex-

**1.** The majority seeks to cast doubt on the theory that children are more suggestible than adults. It is difficult to understand the majority's argument in light of recent well-publicized cases where sensational charges, later proved to be false, were made by children after they were interviewed by therapists who employed aggressive and leading questions. In the *McMartin* case (jury trial, no published opinion), Ray Buckey and Peggy McMartin Buckey, owners of the McMartin pre-school in Manhattan Beach, CA, were charged with multiple counts of rape and sodomy, acts which the children alleged took place over many months and were accompanied by the slaughtering of animals and elaborate satanic rituals. Despite wide and arguably prejudicial pre-trial publicity, both defendants were acquitted by a jury on 52 counts of child molestation; the jury was unable to reach a verdict on 13 other counts. *See* David Shaw, *McMartin and the Media: Time McMartin Coverage was Biased, Critics Charge*, Los Angeles Times, January 22, 1990 at A1. In the *Akiki* case (jury trial, no published opinion), another pre-school teacher, Dale Akiki, was acquitted by a jury on all counts, but only after spending more than two years in jail awaiting trial. Allegations in this case, again made after interviews with a large number of children, included the ritual slaying inside the pre-school of a giraffe and an elephant. *See Reaction to Akiki Verdict: Many are Critical of D.A. and the Prosecutor*, San Diego Union Tribune, November 24, 1993 at B7. I should state yet again that none of this is meant to argue that child molestation does not exist, or is not a serious problem. There is, however, also a significant threat to the liberty interests of some alleged molesters created by the suggestibility of some alleged child victims. Simply put, I am aware of no trial since those held in Salem in which a group of adults suggested occurrences similar to those alleged in the *McMartin* and *Akiki* cases.

**2.** See, e.g., Christiansen, *supra* at 711, 714–15; H. Humphrey, Report on Scott County Investigation (1985).

pense, and even for extensive studies in a proper medical setting. When a jury trial is involved, the court should insure that the jury has the benefit of whatever aid or assistance the court can properly provide the jurors in arriving at the right result. At the very least it should make certain that the jury is instructed in the fullest, fairest and most informative manner possible, and that it gives whatever instructions would help the jurors to ascertain the truth.

## II.

The case before us is one in which we will probably never know the truth with certainty. We can only hope that on this occasion the jury system worked as intended and that the jury returned the correct result. However, the degree of confidence we can have in any such verdict depends in part on the extent to which the instructions provided the jurors with the guidance and assistance they required, and to which they were entitled. Here, that confidence is, unfortunately, substantially diminished. For, in my opinion, the trial court failed to afford the necessary guidance to the jurors—guidance that would have enabled them to make a decision that would have had a significantly greater chance of matching the truth. Perhaps the jury reached the correct result anyway. As one who bears a responsibility for the ultimate consequences, I certainly hope so.

Thomas McGravey was accused of sexually molesting his nephew, Michael, when the boy was seven and again when he was nine. McGravey was convicted, in Guam, by a jury. McGravey maintains that Michael fabricated the charges at the instigation of his mother, McGravey's sister, with whom McGravey has had a bitter family feud. At trial the existence of the feud was revealed as well as the fact that the boy had once before lied when his mother's interests were at stake. He had falsely told school officials that strap marks inflicted on him by his mother were caused by a fall from a ladder.

There was no corroborating evidence supporting Michael's story that he was molested by his uncle or even that he was molested at

all. There is no indication that he was ever examined by any professional, let alone one trained to deal with the sexual molestation of children, actual or alleged.[3] No experts testified at the trial—medical, psychological, or otherwise. With the exception of a police officer who testified that she could not recall any details regarding the complaint Michael had filed along with his mother several months earlier and Michael's mother's boyfriend who testified as to the close relationship between Michael and his mother, everyone who testified at the trial was a member of the McGravey family. Not one of the family members offered any evidence directly relating to the incident, except that Michael's mother testified that Michael told her about the events in question at some point after the second alleged occurrence. She also described the history of estrangement from her brother in some detail. McGravey's brothers and father testified that Michael had some behavioral problems and that McGravey was not the type of person who would engage in acts of homosexual child molestation. While all of this evidence may have sketched a partial and partisan picture of some aspects of McGravey family life, it cast little light on the central question of whether McGravey had sexually molested Michael.

The only question before the jury was whether to believe the boy, then ten years old, or McGravey. The jury had to determine whether a heinous crime had in fact occurred solely on the basis of its assessment of the respective credibility of McGravey and his nephew. It is hard to imagine a case that would place more strenuous demands on our adversary system of criminal justice or a circumstance in which meticulous instruction of the jury would be more critical. Yet only the most routine pattern jury instructions were given. No special effort was made to ensure that the jury arrived at the correct result. No special instructions were tailored to the type of case involved. To the contrary, the defendant's requests that special

---

3. Whether a court should order such examinations in cases of alleged sexual abuse against

children is a question not raised by the parties . and, therefore, not before us.

instructions pertinent to a case of this nature be given were rejected in their entirety.[4]

The majority concludes that the standard instructions that were given to the jury were of sufficient assistance in this case—that they sufficiently protected McGravey's rights. I strongly disagree. As an appellate court we should be vigilant in our efforts to ensure that juries are given whatever instructions are necessary to minimize the possibility that unjust verdicts will be rendered. We can do that here by requiring that in child molestation cases the court give instructions that are designed to deal with the unique problems that are presented by such cases. I would hold, in the exercise of our supervisory powers, *see United States v. Rubio–Villareal*, 967 F.2d 294, 297–98 (9th Cir.1992) (en banc), that in child molestation cases a trial judge should ordinarily give the jury an appropriately worded child-witness instruction—a special cautionary instruction of the type discussed in Section III *infra*. Moreover, where such a prosecution rests on the testimony of a single witness, I believe that the jury should be instructed to examine the evidence with particular care.[5] Because neither of these protective instructions was given here, I would reverse McGravey's convictions.

### III.

### A.

The majority holds that the trial court's refusal to give a child-witness instruction along the lines of the one requested by McGravey was not error. The relevant portion of the requested instruction reads:

**4.** To a large extent this was not the trial judge's fault. The judge declined to give McGravey's requested child-witness instruction on the basis of an erroneous recommendation in our *Manual of Model Criminal Jury Instructions for the Ninth Circuit*. *See* discussion in Part III.A *infra*.

**5.** I would balance these instructions with others that ensure that the testimony of the child-witness is not improperly disregarded or given insufficient weight. *See* discussion in Section IV *infra*. What is required in child molestation cases is not only adequate protection for the rights of the defendant but also fuller and more specific guidance for the jury as to how the

Children are likely to be more suggestible than adults. Moreover, children may not have a full understanding of the serious consequences of the testimony they give and the charges they make. You should therefore consider the capacity of a child witness to distinguish truth from falsehood and to appreciate the seriousness of his testimony in evaluating his testimony.

The majority offers two reasons why the trial court's failure to give the child-witness instruction was not erroneous. I disagree with both.

First, the majority claims that the essentials of the child-witness instruction were covered by the other witness credibility instructions given to the jury. This is simply incorrect. By definition general credibility instructions cannot replace a specific instruction that children are likely to be more suggestible than adults and may lack a full appreciation of the consequences of the charges they make. The majority also notes that the *Manual of Model Criminal Jury Instructions for the Ninth Circuit* recommends that a specific child-witness instruction not be given. 9th Cir.Crim. Jury Instr. 4.14 comment, at 52 (1992). Such a recommendation is not binding on us. We are free to hold that an instruction is required in a particular case even if it is not recommended in that informal guide. In fact, we recently reiterated that we may find an instruction erroneous, notwithstanding its presence in our pattern jury instruction book. *United States v. Warren*, 984 F.2d 325, 327 n. 3 (9th Cir.1993). Here, the recommendation contained in the manual is not only not binding, it is wrong.[6]

crucial credibility determinations should be made.

**6.** The recommendation in the Model Criminal Jury Instructions is based upon a misreading of *Pocatello v. United States*, 394 F.2d 115, 116–17 (9th Cir.1968) (per curiam), a case which is simply irrelevant to the issue presented here. The question in *Pocatello* was whether a five year old child was *competent* to testify. *Pocatello* explicitly considered only whether a child-witness' testimony was *admissible*, an issue we left to the sound discretion of the trial *judge*. The case does not in any way address whether special *credibility* instructions should be given to the *jury* regard-

### B.

In other situations we have not hesitated to hold that jurors must be given special cautionary instructions—in *addition* to general credibility instructions—to help them weigh the testimony of witnesses who fall into certain categories in cases where there is no corroborative evidence to support the testimony of those witnesses. We have held that it is error to fail to give a special credibility instruction regarding the testimony of witnesses granted governmental immunity; *United States v. Bernard,* 625 F.2d 854, 858–59 (9th Cir.1980); witnesses who are accomplices or/and government informers; *United States v. Bosch,* 914 F.2d 1239, 1247 (9th Cir.1990); *Guam v. Dela Rosa,* 644 F.2d 1257, 1259–60 (9th Cir.1980); *United States v. Martin,* 489 F.2d 674, 677 n. 2 (9th Cir. 1973), *cert. denied,* 417 U.S. 948, 94 S.Ct. 3073, 41 L.Ed.2d 668 (1974); or witnesses who were drug addicts; *United States v. Ochoa–Sanchez,* 676 F.2d 1283, 1289 (9th Cir.), *cert. denied,* 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982); *Dela Rosa,* 644 F.2d at 1261. We have recognized that these witnesses present special credibility problems and that juries should be given added guidance as to how to evaluate the testimony.

There is at least as compelling a reason for a cautionary instruction pertaining to child witnesses in sexual molestation cases. For the reasons I have explained above, I would direct that ordinarily such an instruction be given in all such cases. Nevertheless, I would permit a trial judge to decline to give

the instruction in certain circumstances, if he or she has good cause for doing so. In this connection I note that as a child approaches maturity, there is less reason to be concerned about the dangers of suggestibility and the possible confusion of imagination and reality. Also, to the extent that physical or other corroborative evidence exists there may be less reason for concern over the genesis of the child's contentions.[7] All in all, however, the giving of the instruction along with the necessary balancing ones, can do little harm and may in particular cases make a difference between the jury's returning a just and an unjust verdict.

The majority seeks to divest itself of its responsibility to ensure that justice is done by uttering the shibboleth "we leave it to the sound discretion of the trial judge". How many times have appellate judges failed to do their job by citing this phrase? Countless, I would suspect. Sometimes, courts of appeals must do just what the majority suggests. Other times, not. This is one occasion on which we clearly err in failing to review the district court's determination with sufficient care.

The district judge followed an erroneous Ninth Circuit pattern jury instruction. See discussion IIIA and n. 4, *supra.* In our Comments to our Model Instructions we told the district courts that no special instruction should be given. *See* 9th Cir. Crim. Jury Instr. 4.14 comment (1992). While the district judge was not compelled to follow our "recommendation", it could hardly have es-

---

ing the *weight* that should be given the testimony of a child witness. *See also Barnes v. United States,* 600 A.2d 821, 825 (D.C.App.1991) ("There is an important distinction between the competency of a child to testify and the assessment of a child witness' credibility. The former is a question of law to be decided by the court. The latter is a function for the jury." (internal citation omitted)).

**7.** I believe that the trial judge should have considerable latitude in formulating the exact language of a child-witness instruction in a manner that fits the particular circumstances of a given case, *Barnes,* 600 A.2d at 821; *Commonwealth v. Avery,* 14 Mass.App.Ct. 137, 437 N.E.2d 242, 246 (1982). However, any child-witness instruction should convey the fact that children are more suggestible than adults. It should also note that children may have difficulties separating recol-

lection of an imaginary event from a real memory. An appropriate child witness instruction might read:

Children are likely to be more suggestible than adults. A child may also have confuse recollection of an imagined experience with the memory of a real event. Furthermore, children may not have a full understanding of the serious consequences of the testimony they give and the charges they make. In evaluating a child witness' testimony you should, therefore, consider whether it is based on his own recollection or upon the influences of others. You should also consider whether the testimony is based on memories of real or imagined events. In addition, you should consider the child witness' appreciation of the serious consequences of his testimony.

caped his notice that two members of our court (the same number as constitutes a majority today) had officially proclaimed that district judges should not give the instruction requested by the defendant. In fact, the prosecutor represented to him that the "(d)efendant's proposed 'Child as a Witness' instruction is expressly disapproved·by the Ninth Circuit Court of Appeals". Immediately afterwards, he denied the defendant's request.

We can hardly now pretend that all the district court did was to exercise its own sound discretion. To the contrary, the district judge applied the erroneous rule we foisted upon him. To now seek to escape responsibility for that error by claiming that we are simply relying on the "sound discretion of the trial judge" is to reveal a certain blind spot—either intellectual or moral. The argument is too reminiscent of the bureaucratic and jurisprudential fumbling, bungling and buck-passing that led to the execution of Private Slovik.[8] In reality, the responsibility for the defendant's fate lies with us. No invocation of pat phrases or standards of review will allow us to pass it on to the district judge. Essentially, he was merely following orders—or, in· this case, "recommendations".

### C.

Turning to the facts of this case, I would hold that the judge's failure to give a child witness instruction constituted error. There are no circumstances that suggest a reason for omitting the instruction here. To the contrary, there is even more reason to give one, since it is undisputed that the child previously lied on behalf of the very person who the defendant suggests induced him to testify to sexual molestation. Thus, there was no justification for refusing to give the requested instruction.

### IV.

I believe the trial judge committed an additional error in this case as well. The gov-

ernment's proof of sexual molestation depended entirely upon the testimony of one witness. That requires a special instruction, wholly apart the fact that the witness was a young boy. Because the success of the government's case depended wholly upon the testimony of a single witness, the jury should have been instructed to review the evidence against the defendant with particular care. This rule is a settled proposition under California law. Because much of Guam's statutory law is modeled upon California's, California cases are persuasive where, as here, there is a paucity of authoritative Guam decisional law. *See Hemlani v. Guerrero,* 902 F.2d 1412, 1414 n. 3 (9th Cir.1990); *Lucero v. Stewart,* 892 F.2d 52, 54 (9th Cir.1989); *Guam v. Ojeda,* 758 F.2d 403, 406 (9th Cir. 1985).

In *California v. Rincon–Pineda,* the California Supreme Court unanimously held that a special instruction should be given *sua sponte* by the trial court to protect a defendant's rights in cases in which the prosecution is based upon the uncorroborated testimony of a single witness. 14 Cal.3d 864, 123 Cal.Rptr. 119, 133–34, 538 P.2d 247, 261 (1975); *California v. Pringle,* 177 Cal.App.3d 785, 223 Cal.Rptr. 214, 217 (1986), *disapproved on other grounds by California v. Gammage,* 2 Cal.4th 693, 7 Cal.Rptr.2d 541, 828 P.2d 682 (1992). That instruction, now CALJIC No. 2.27, currently reads as follows:

> You should give the uncorroborated testimony of a single witness whatever weight you think it deserves. However, testimony by one witness which you believe concerning any fact is sufficient for the proof of that fact. You should carefully review all of the evidence upon which the proof of such fact depends.

[hereinafter "single-witness instruction"] The majority cites a raft of boiler-plate credibility instructions in support of its conclusion that the instructions actually given were adequate.[9] However, none emphasizes the need

---

8. William Bradford Huie (1954), *The Execution of Private Slovik.*

9. I have no disagreement with anything the majority states in Part I (or Part II) of its opinion.

The majority simply fails to address the fact that the jurors were not given an instruction that told them to review the evidence with particular care because the government's proof of sexual moles-

for particularly careful review where there is only one witness. General credibility instructions are no substitute for the single-witness instruction. The *Rincon–Pineda* court made clear that the single-witness instruction was an additional procedural protection for the defendant that served an important function above and beyond any general jury instructions on witness credibility. *See* 123 Cal.Rptr. at 133–34, 538 P.2d at 261–62.

A trial court's failure to give the single-witness instruction *sua sponte* is error. *California v. Adams*, 186 Cal.App.3d 75, 230 Cal.Rptr. 588, 590 (1986), *disapproved on other grounds by California v. Gammage*, 2 Cal.4th 693, 7 Cal.Rptr.2d 541, 828 P.2d 682 (1992); *Pringle*, 223 Cal.Rptr. at 217. In this case no single-witness instruction was given and none of the other instructions, either separately or as a whole, admonished the jury to review Michael's testimony with particular care because the government's proof of the sexual molestation was entirely dependent upon a single witness. As in *Adams* and *Pringle* the erroneous omission of the single witness instruction was compounded by the judge's giving a legally correct instruction that stated that "[t]he testimony of a victim of sexual conduct need not be corroborated if that victim is believed beyond a reasonable doubt." [hereinafter "non-corroboration instruction"] [10] While it is proper to give *both* the non-corroboration instruction and the single-witness instruction, *California v. Gammage*, 2 Cal.4th 693, 7 Cal.Rptr.2d 541, 828 P.2d 682 (1992),[11] it is improper to give the non-corroboration instruction without a single-witness instruction. *Adams*, 186 Cal.App.3d 75, 230 Cal.Rptr. at 590; *Pringle*, 223 Cal.Rptr. at 217. To achieve a proper balance between the rights

of the defendant and those of the complaining witness, both instructions must be given. *California v. Hollis*, 235 Cal.App.3d 1521, 1 Cal.Rptr.2d 524, 527 (1991), *review granted* —— Cal.4th ——, 4 Cal.Rptr.2d 764, 824 P.2d 570 *review dismissed* —— Cal.4th ——, 9 Cal.Rptr.2d 92, 831 P.2d 317 (1992). The trial court erred in not giving a single-witness instruction here.

## V.

The only remaining question is whether the trial court's errors were prejudicial or harmless. In our en banc decision in *Rubio–Villareal* we stated that the government must prove that errors with respect to jury instructions are harmless beyond a reasonable doubt. 967 F.2d at 297 n. 3. I believe the trial judge's errors were not harmless under this standard.

The evidence of guilt was not overwhelming but rather consisted solely of the testimony of a child-witness who had been known to lie for his mother's sake in the past. There was nothing inconsistent or implausible in McGravey's testimony that he never sexually molested his nephew and that the boy was lying at his mother's behest. On the basis of the written record, there is no way of determining who was telling the truth—McGravey or Michael. The entire case for conviction rested squarely upon Michael's credibility. The trial court's failure to give a child-witness instruction and a single-witness instruction went to the core of the jurors' determination of guilt or innocence. Thus, errors in instructions as to how the jury should determine that credibility were highly prejudicial. I would reverse and remand for a new trial

---

tation was entirely dependent on the uncorroborated testimony of one witness.

**10.** The Guam non-corroboration instruction was upheld in *Guam v. Welch*, 1990 Crim. No. 90–00008A, 1990 WL 320365 (Guam App. Oct. 30, 1990). *Welch* does not answer the question whether a single witness instruction is required under Guam law in the circumstances of the present case. The opinion does not indicate whether a single-witness instruction was given or not and in *Welch* there was corroboration. Moreover, the *Welch* court relied upon *California v. McIntyre*, 115 Cal.App.3d 899, 176 Cal.Rptr. 3

(1981), which upheld a non-corroboration instruction where a single-witness instruction *was given*. Thus, the majority errs when it states its decision here comports with *Welch*; that decision was based upon cases which *require* the giving of a single witness instruction.

**11.** *Gammage* disapproved statements in *Adams* and *Pringle* that only the single-witness instruction should be given. *Gammage* reaffirmed that both the single-witness instruction and the non-corroboration instruction should be used.

in which the omitted instructions would be given to the jury.

I respectfully dissent.