**Darwin GALINDO, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 92–CF–448.

District of Columbia Court of Appeals.

Argued June 11, 1993.

Decided Aug. 30, 1993.

Matthew C. Leefer, Frederick, MD, appointed by this court, for appellant.

M. Evan Corcoran, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and Thomas C. Black and Mark Ehlers, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before ROGERS, Chief Judge, and SCHWELB and KING, Associate Judges.

ROGERS, Chief Judge:

Appellant Darwin Galindo appeals from his conviction by a jury of taking indecent liberties with a minor child.[1] D.C.Code § 22–3501(a) (Repl.1989). He contends that the trial judge erred in finding that the three-year-old complainant was competent to testify, in precluding cross-examination of the complainant's mother about prior bad acts and allowing the mother to testify about the complainant's statements, and in admitting the testimony of the examining physician about the mother's statements. He also contends that the trial judge erred in denying his motion for a judgment of acquittal. We affirm.

### I.

The charges arose as a result of an incident on September 21, 1991, when the complainant's mother left the three-year-old complainant in the care of appellant (who was married to the mother's sister) while the mother and appellant's wife went to work. At trial, approximately five months later, the complainant testified through an interpreter. The complainant said that while her cousin, who was six at the time

---

1. Appellant was indicted for assault with intent to commit carnal knowledge, D.C.Code § 22– 501 (Repl.1989), and convicted of the lesser included offense.

of trial, was in another room, appellant pulled her clothes down and "did something to me.... that he had right here," pointing to her genital area. The complainant further explained that appellant touched her with "a thing which is called a pee pee," and told her to "touch that thing." The complainant also said that something came out of the "thing."

The complainant's mother testified that when she left the complainant with appellant, the complainant's six-year-old cousin (appellant's son) and the mother's teenage brother (the uncle) were also in appellant's apartment. The mother was gone from approximately 9:45 a.m. to 3:00 p.m. When she returned with appellant's wife after work, the complainant immediately said she wanted to be with her mother, and appellant's wife asked, "what have they done to you, why are you so mad?" Appellant's son returned with the complainant and her mother to the complainant's apartment to play, but the mother eventually sent the boy home because the complainant was "very sniffly and crying." According to the mother, "[a]lmost right after [appellant's son] left," the complainant asked to be bathed "because [appellant] has spilled something on me."[2] The complainant then told her mother that appellant had "put a thing there" and pointed to her genital area. When the mother asked her daughter, "where did he have the thing," the complainant pointed again to her genital area. The judge immediately instructed the jury that the testimony about what the complainant told the mother could only be used to show that a complaint of sexual assault was made, and not to prove the truth of statements in the complaint.

On cross-examination, the mother testified that the complainant told her that appellant "had taken down his pants," taken the complainant's underwear off, wiped off the complainant with a towel, and kissed the complainant on the mouth. She further testified that the complainant's genitals were "irritated and rubbed," and that she had noticed changes in the complainant's behavior after the incident.

The uncle testified that the complainant's mother arrived at appellant's apartment around 9 a.m. and left about an hour later; he (the uncle) left about an hour after that, leaving appellant and the two children (the complainant and appellant's six-year-old son) alone in the apartment. When the uncle returned approximately two hours later, the complainant was crying, and she was "kind of uncomfortable, [and] didn't really ... play like she [usually] did" for the rest of the afternoon. The uncle remained in the same room as the two children continuously from the time he returned home until the complainant's mother arrived. When the complainant's mother returned around 4 p.m., the complainant ran to her and "told her mother she didn't want to be there no more."

Dr. Rosella Castro, who testified as an expert in general medicine and pediatrics, examined the complainant two days after the incident. At the time the doctor was unable "to get words from" the complainant, who was acting "a little shy and a little bit withdrawn." When the doctor questioned the complainant after speaking with the complainant's mother, the complainant pointed to her genitalia. The doctor found redness in the complainant's inner genitalia that, in her opinion, was consistent with contact with a round, firm object, such as a male sexual organ, and with sexual abuse, but inconsistent with skin irritation or the complainant's causing the redness herself. On cross-examination, the doctor admitted that her conclusion regarding sexual abuse was strongly influenced by the history given by the mother. The doctor also testified that the mother told her that "whoever was taking care of [the complainant] put his genitalia and touched her," and that this person urinated on the complainant. The doctor called the police to report suspected sexual abuse.

---

**2.** It is not clear exactly how much time passed after the mother retrieved the child before appellant's son left and the complainant spoke to her mother. The elapsed time appears to have been approximately two hours according to appellant's testimony and a relatively short time, perhaps fifteen to thirty minutes, according to the complainant's mother.

The defense theory was that appellant was being falsely accused as a result of an on-going family feud and that the complainant's testimony was not worthy of belief. In his defense, appellant called his wife, who testified that she and appellant had had some disagreements with the complainant's mother, who had said uncomplimentary things about appellant and taken at least one job away from appellant's wife. Appellant's wife claimed that she saw nothing unusual about the complainant's behavior upon returning from work on September 21, 1991. Appellant's six-year old son testified that he did not remember the complainant crying the last time he played with her, which was apparently the day of the incident; he had been playing a video game in a bedroom that day and claimed that appellant slept all day in one of the bedrooms.

Appellant also testified. He explained that he had had arguments with the complainant's parents. Appellant testified that the uncle had been out of the apartment for only ten or fifteen minutes on September 21, 1991, and that the complainant's mother and appellant's wife had returned to the apartment around 3 p.m. He denied that he had done anything unusual to the complainant, removed her clothes, or seen her cry, and he testified that he spent part of the day resting in his bedroom and part of the day in the living room working.

## II.

Appellant contends that the trial judge erred in denying appellant's pretrial request for psychological or psychiatric examination of the complainant and in finding that the complainant was competent to testify at trial. Prior to trial the judge conducted a competency hearing at which the complainant and her mother testified and the complainant was questioned by both counsel and the trial judge. While acknowledging that the complainant had some problems recalling numbers, the judge concluded that the complainant was competent because she understood the difference between truth and falsehood, was able to recount events, and was "remarkably accurate in her answer[s] to the various questions."

The determination of a witness' competence to testify lies within the sound discretion of the trial judge, and this court will not disturb the judge's factual determination unless it is "plainly deficient." *Vereen v. United States*, 587 A.2d 456, 457 (D.C.1991) (citing *Collins v. United States*, 491 A.2d 480, 484 (D.C.1985), *cert. denied*, 475 U.S. 1124, 106 S.Ct. 1646, 90 L.Ed.2d 190 (1986)); *see also Beausoliel v. United States*, 71 U.S.App.D.C. 111, 112, 107 F.2d 292, 293 (1939).[3] This court necessarily defers to the trial judge's ability to observe the witness.[4] A child is a competent witness if she is able to "recall the events which are the subject of the testimony; and

---

3. Appellant relies on the statement in *Beausoliel, supra,* that "no one would think of calling as a witness an infant only two or three years old." *Id.* at 112, 107 F.2d at 293 (quoting *Wheeler v. United States*, 159 U.S. 523, 524, 16 S.Ct. 93, 40 L.Ed. 244 (1895)). However, decisions about young children's competence to testify have changed. *See, e.g., Richard v. State*, 306 Ark. 543, 815 S.W.2d 941, 942 (1991) (three-year-old); *Casselman v. State*, 582 N.E.2d 432 (Ind.Ct.App. 1991) (three-year-old competent, but much of testimony stricken by trial judge in bench trial, apparently on credibility grounds); *State v. Bailey*, 52 Wash.App. 42, 757 P.2d 541, 545 (1988) (three-year-old), *aff'd*, 114 Wash.2d 340, 787 P.2d 1378 (1990); *In Re C.B.*, 749 P.2d 267 (Wyo.1988) (three-year-old, plain error review, child able to demonstrate on anatomically correct dolls); *People v. District Court*, 791 P.2d 682, 685, 686 (Colo.1990) (en banc) (four-year-old competent to testify because child need not

know difference between truth and lies, or meaning of oath to tell the truth); *People v. Jehnsen*, 183 Mich.App. 305, 454 N.W.2d 250, 252 (1990); *State v. Walters*, 247 Mont. 84, 806 P.2d 497, 500 (1991) (four-year-old); *In re M.L.S.*, 234 Neb. 570, 452 N.W.2d 39, 41 (1991) (four-year-old); *State v. Bauman*, 98 Or.App. 316, 779 P.2d 185, 186 (1989) (four-year-old); *Reyna v. State*, 797 S.W.2d 189, 192 (Tex.Ct.App. 1990) (four-year-old); *see also Edmonson v. United States*, 346 A.2d 515, 516 (D.C.1975).

4. *Cf. Williams v. United States*, 595 A.2d 1003, 1006 (D.C.1991). In the instant case, the complainant testified through an interpreter. Therefore, her demeanor may be even more crucial, and the transcript less helpful, than usual because the words in the transcript have been filtered through an interpreter.

... understand the difference between truth and falsehood and appreciate the duty to tell the truth." *Barnes v. United States*, 600 A.2d 821, 823 (D.C.1991). *See also Beausoliel, supra*, 71 U.S.App.D.C. at 113, 107 F.2d at 294; *cf. Vereen, supra*, 587 A.2d at 457. Obviously, with a very young child there is reason for the trial judge to conduct a thorough voir dire. *See Barnes, supra*, 600 A.2d at 823. Here, the experienced trial judge conducted an extensive voir dire and she specifically found that while the complainant "doesn't know why she has to tell the truth ... it's quite clear from her repeated spontaneous insistence that she doesn't tell lies, that she does tell the truth, that she in her mind feels it was important to tell the truth and not to tell a lie...." Under the circumstances there is no basis on which this court can conclude that the trial judge's determination was "plainly deficient." *Vereen, supra*, 587 A.2d at 457.

▇▇ Furthermore, given the presumption against compelling psychological or psychiatric examinations of witnesses, which is based on concerns regarding the attendant invasion of the witness' privacy and the potential use of such examinations to harass opposing witnesses, *see id.* at 457, 458; *Collins, supra*, 491 A.2d at 484, we find no basis on which to conclude that "the record provides 'unmistakable evidence that the trial court's impressions are defective.'" *Collins, supra*, 491 A.2d at 484 (witness for whom examination sought was the victim and the only eyewitness) (quoting *Hilton v. United States*, 435 A.2d 383, 388 (D.C.1981)). The judge gave a candid appraisal of the complainant's shortcomings with respect to her ability to recall numbers, but the judge properly relied on the relevant factors in concluding that the complainant was competent. Appellant has failed to suggest any basis for overcoming the presumption against ordering an examination. He did not proffer at trial (nor does he on appeal) that the complainant had any psychological problems or mental illnesses, relying instead only on her age

and the need to use an interpreter as reasons for requesting the examination. This was insufficient to overcome the presumption. *See Barrera v. United States*, 599 A.2d 1119, 1126 (D.C.1991). Appellant's reliance on *United States v. Crosby*, 149 U.S.App.D.C. 306, 308, 462 F.2d 1201, 1203 (1972) ("red flag" of drug addiction, drug use on day of trial, and prior hospitalization), is misplaced since that case is factually so dissimilar as to offer little guidance here.

### III.

Appellant also contends that the trial judge erred in precluding cross-examination of the mother and in allowing the mother to testify about the complainant's statements. We find neither contention meritorious.

### A.

▇▇ A party may cross-examine a non-defendant witness concerning prior bad acts that have not resulted in convictions only where the party "has a factual predicate for such question[s]," and "the bad act 'bears directly on the veracity of the witness in respect to the issues involved [at] the trial.'" *Sherer v. United States*, 470 A.2d 732, 738 (D.C.1983) (quoting *United States v. Akers*, 374 A.2d 874, 878 (D.C. 1977) (citation omitted)), *cert. denied*, 469 U.S. 931, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984). *See also Roundtree v. United States*, 581 A.2d 315, 323 (D.C.1990). We find no abuse of discretion by the trial judge. *Id.*

▇▇ Defense counsel proffered that in September and October of 1991 the mother had lied on forms and documents in order to obtain Medicaid payments, and counsel sought to cross-examine her on that subject. The trial judge properly ruled that the alleged falsehoods were unrelated to the offense with which appellant was charged and denied counsel's request.[5]

---

**5.** The judge stated that "the factual content of the various cases which deal[ ] with this issue make clear that the questions proffered here are

not related in the required manner to the issue involved in the trial." The judge may also have implicitly decided that there was insufficient

*Lawrence v. United States,* 482 A.2d 374, 376–77 (D.C.1984), cited by appellant, is readily distinguishable. In *Lawrence,* the trial judge refused to permit cross-examination regarding a key government witness' allegedly false prior accusations of sexual conduct between family members, after the witness testified that she had seen her sister's boyfriend sexually assault her niece. *See id.* Moreover, because the complainant in *Lawrence* was "often uncooperative during both direct and cross-examination," the witness' testimony became more crucial. *Id.* In the instant case, in contrast, the alleged wrongdoing was unrelated to the content of the mother's testimony, the complainant was not uncooperative on the witness stand, and the mother's testimony was corroborated by the complainant, the medical evidence, and the mother's brother.

 Furthermore, even where the alleged prior bad act involves a witness' untruthfulness, the Sixth Amendment right of confrontation is "contingent on a showing that the [untruthful conduct] actually took place." *Sherer, supra,* 470 A.2d at 738. *Cf. Roundtree, supra,* 581 A.2d at 323 n. 20.[6] Defense counsel proffered only that appellant's wife had heard the complainant's mother talking with the complainant's father about getting a false letter from his employer so that they could qualify for medicaid assistance; the precise extent of the mother's involvement was not stated with specificity. While defense counsel also proffered that the complainant's parents eventually received medicaid assistance, he was unable to produce any evidence that they used falsehoods to qualify. Under the circumstances, we find no error by the trial judge in refusing to permit the cross-examination. *See Sherer, supra,* 470 A.2d at 739.

### B.

 Similarly, we find no basis to conclude that reversible error occurred when the mother was permitted to testify about the complainant's statements to her. At trial the prosecutor initially maintained that the testimony was admissible as substantive evidence under the excited utterance exception to the hearsay rule. *See Alston v. United States,* 462 A.2d 1122, 1126 (D.C.1983). The trial judge never ruled on this argument, but later gave a report of rape instruction in response to the prosecutor's request. Although objecting earlier on the ground that the report of rape rule was no longer an exception to the hearsay rule in light of the abolition of the requirement of corroboration, defense counsel interposed no objection to the instruction.[7] Thus, immediately after the

---

evidence that the prior bad act had occurred. The judge stated that:

> We're not even talking here about firsthand knowledge. We're just talking about somebody who said that this witness lied under certain circumstances which are in no way related to the circumstances here.

*See Roundtree, supra,* 581 A.2d at 323 ("notwithstanding the fact that a party proposing cross-examination claims to have a 'factual predicate' ... the trial court may assess the questioner's offer of proof to determine whether such a factual predicate exists"); ·*Sherer, supra,* 470 A.2d at 738–39. Defense counsel offered to voir dire appellant's wife, who allegedly heard the child's parents planning to get a letter from the father's employer understating the father's income.

6. "[T]he constitution does not require confrontation of witnesses with irrelevant evidence." *Roundtree, supra,* 581 A.2d at 321. The Confrontation Clause mandates that the defendant be allowed to cross-examine the witness on prior falsehoods "only where it is 'shown convinc-

ingly'" that the prior statements were actually untrue. *Id.* (quoting *Sherer, supra,* 470 A.2d at 739); *see also id.* at 322 (where complainant has previously made allegations similar to those made at trial, cross-examination on prior allegations "constitutionally mandated" only if prior statements "shown convincingly" to be false). If the two-part test of *Sherer* and related cases is satisfied, the judge retains broad discretion, even where Confrontation Clause concerns apply, to weigh "the probable effect on fair and efficient conduct of the trial." *Id.* at 323 (quoting *Sherer, supra,* 470 A.2d at 738).

7. The requirement for corroboration of a sexual offense victim's testimony has been abolished. *See* D.C.Code § 23–114 (Repl.1989) (child's testimony); *Gary v. United States,* 499 A.2d 815, 833–34 & n. 22 (D.C.1985) (en banc) (child victims), *cert. denied,* 475 U.S. 1086, 477 U.S. 906, 106 S.Ct. 1470, 106 S.Ct. 3279, 89 L.Ed.2d 725, 91 L.Ed.2d 568 (1986); *Arnold v. United States,* 358 A.2d 335, 344 (D.C.1976) (en banc) (adult victims).

mother repeated the complainant's statements, the trial judge instructed the jury that the testimony was admissible "only as evidence that a report of a sexual assault was made," and not as evidence of the truth of the statements.

Under the report of rape rule, a witness may testify that the complainant stated that a sexual crime occurred and may relate the detail necessary to identify the crime. While the corroboration requirement has been abolished as a part of the government's burden of proof, *see supra* note 7, courts have recognized that the need for corroboration continues for several reasons, including the need to rebut an implied charge of recent fabrication that exists in the minds of jurors. *See Battle v. United States*, 630 A.2d 211, 217, 218, 220–221 (D.C.1993);[8] *cf. Fitzgerald v. United States*, 443 A.2d 1295, 1305 (D.C.1982) (en banc) (forestalls jurors' inference that if there is no evidence of a prompt complaint of rape, there was no such report, and if no report was made, no crime occurred) (quoting Wigmore, Evidence § 1135, at 298–99 (Chadbourn rev. 1972)). The court has recently examined the question in detail and concluded that the basic reasons for the report of rape rule remain valid after the elimination of the corroboration requirement. *See Battle, supra*, at 221.

■ Accordingly, the mother's testimony that the complainant pointed to her genitals and said "he put a thing there" was admissible to show that the child reported a sexual offense. In the absence of actual impeachment of the complainant, limited details regarding the complainant's report

to her mother were admissible to show that the complainant was describing a sexual assault. *Id.* at 223. The complainant was three years old and, understandably, had a limited sexual vocabulary. The mother's testimony that the complainant first said that "he has put a thing there," did not clearly indicate that the complainant was describing a sexual assault. The limited additional details regarding the complainant's statements—that the complainant said "here, mommy" while "pointing to her private parts" to indicate the "thing" with which appellant touched her and where he touched her—simply indicated that the act complained of was a sexual assault. While the mother's testimony that the complainant asked to have a bath because appellant spilled something on her was unrelated to showing that the complainant was describing a sexual assault, appellant has failed to show any prejudice.[9] The mother's other testimony that the complainant said appellant had "put a thing there" was admissible, *see id.* at 221–22, 222, 223, the medical evidence strongly corroborated the complainant's testimony, and the complainant's testimony was quite explicit and sufficient to convict appellant. *See Barrera, supra*, 599 A.2d at 1124–25.[10] The complainant was available for cross-examination, and the trial judge twice gave a limiting instruction on the proper use of the testimony. In addition, defense counsel, during cross-examination of the mother, brought out further details that the complainant had told the mother.

### IV.

■ Finally, appellant contends that the trial judge erred in allowing the doctor

8. Among the courts continuing to admit evidence of a prompt report of a sexual offense under the report of rape rule are Connecticut, New Jersey, and Pennsylvania. *See State v. Pollitt*, 205 Conn. 61, 530 A.2d 155, 163 (1987) (en banc); *State v. Hill*, 121 N.J. 150, 578 A.2d 370, 371, 374–76, 378 (1990) (en banc); *Commonwealth v. Green*, 487 Pa. 322, 409 A.2d 371, 374 (1979) (en banc); *Commonwealth v. Freeman*, 295 Pa.Super. 467, 441 A.2d 1327 (1982).

9. The parties stipulated that the stain on the complainant's clothing had been analyzed and had not been found to be semen.

10. Hence, appellant's contention that the trial judge erred in denying his motion for a judgment of acquittal is meritless. Viewing the evidence, as we must, in the light most favorable to the government, we cannot say that no reasonable juror could find beyond a reasonable doubt that appellant took indecent liberties with the complainant. *See Curry v. United States*, 520 A.2d 255, 263 (D.C.1987); *Shelton v. United States*, 505 A.2d 767, 769 (D.C.1986). In addition to the complainant's rather explicit testimony, there was corroborating medical evidence as well as corroborating evidence with respect to appellant's opportunity and the complainant's conduct during the relevant day.

to testify about the mother's statements to the doctor. Under the medical diagnosis exception to the hearsay rule, statements made by a patient for purposes of obtaining medical treatment are admissible for their truth because the law is willing to assume that a declarant seeking medical help will speak truthfully to medical personnel. *See Sullivan v. United States,* 404 A.2d 153, 158 (D.C.1979). We find no principled basis in the instant case not to apply the same rationale to a parent who brings a very young child to a doctor for medical attention; the parent has the same incentive to be truthful, in order to obtain appropriate medical care for the child. *Cf. Stull v. Fuqua Industries, Inc.,* 906 F.2d 1271, 1274 (8th Cir.1990) (to fall within medical records exception under FED. R.EVID. 803(4), "the statement must be obtained from the person seeking treatment, or in some instances from someone with a special relationship to the person seeking treatment, such as a parent"); *Petrocelli v. Gallison,* 679 F.2d 286, 291 (1st Cir.1982) (FED.R.EVID. 803(4) allows admission of "patient or family statements" which are "reasonably pertinent to diagnosis"); *State v. Bauman, supra* note 3, 779 P.2d at 186 (dictum); *Yellow Cab Co. v. Henderson,* 183 Md. 546, 39 A.2d 546, 550 (1944). Appellant's suggestion that the visit to the doctor was prompted by legal rather than treatment incentives is unpersuasive. The mother took the complainant to the clinic the next day that the clinic was open; it was closed on weekends. The doctor, not the mother, recognized the sexual assault as a criminal matter and referred the matter to the police. The mother's statements to the doctor did not suggest a deliberate attempt to lay a foundation for expert testimony at a trial, *see Sullivan, supra,* 404 A.2d at 158–59, but rather suggested a mother's natural concern about her child's condition and health.

The court has recognized that statements about the cause of injuries fall within the medical diagnosis exception to the hearsay rule because explaining the cause of injuries may facilitate treatment. *Sullivan,*

*supra,* 404 A.2d at 158; *see also United States v. Iron Thunder,* 714 F.2d 765, 772–73 (8th Cir.1983) (doctor's testimony about adult rape victim's statements admissible); *United States v. Iron Shell,* 633 F.2d 77, 84 (8th Cir.1980) (two-part test for admissibility), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *United States v. Nick,* 604 F.2d 1199, 1201–02 (9th Cir.1979) (upholding admission of doctor's testimony that child described sexual assault). The court has held that the medical diagnosis exception applies to statements in a complainant's hospital records about the injured party's explanation of the cause of the injury. In *Sullivan, supra,* the patient's hospital records indicated that the complainant had said that his injuries were caused during a fight and not a car accident. *Sullivan, supra,* 404 A.2d at 158. The statements were presumably the reports noted by hospital staff of what the complainant had told them.[11]

 In the instant case, the doctor's testimony that the mother said that the person who was supervising the complainant was the sexual assailant is admittedly a statement of blame rather than a mere statement of causation. Even if statements of fault are generally excluded from the medical diagnosis exception, *see id.* at 159 & n. 11, a statement by a child or her parent that the child has been sexually assaulted by someone who is effectively a member of the child's immediate household is admissible when "reasonably pertinent to treatment," because the injury involves more than mere physical injury, but has psychological and emotional consequences as well. *See United States v. Renville,* 779 F.2d 430, 437–38 (8th Cir.1985) (identity of abuser may affect nature and extent of psychological problems caused by child abuse; rule "banning statements of fault is premised on the assumption thát the injury is purely somatic"); *cf. Cassidy v. State,* 74 Md.App. 1, 536 A.2d 666, 683 (1988). Such statements are also relevant to preventing a reoccurrence of the abuse. *See Renville,*

---

**11.** There is no indication in the opinion that the person who wrote the statement in the hospital record was the same person who actually spoke to the complainant.

*supra*, 779 F.2d at 438;[12] D.C.Code § 2-1352(a)(b) (Repl.1988) (requiring physician to report any discovery of child abuse). We find no error in the trial judge's ruling on this issue. But, in any event, even if the doctor's testimony included an impermissible statement of fault, the error was harmless. *See Kotteakos v. United States*, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946). Any prejudice was mitigated by the fact that the complainant, her mother, and the doctor testified at trial and were available for cross-examination.[13] The doctor's testimony relating to the mother's statements did not identify the wrongdoer by name, but only referred to the assailant as "whoever was taking care of [the child]." The mother's statements repeated by the doctor were cumulative of testimony by the complainant and her mother. In addition, identity of the abuser was not an issue at trial; the defense never claimed that the complainant had been sexually abused by someone else and the defense theory was that the complainant and her mother were fabricating their stories.

 Appellant fares no better with his contention that because the doctor's diagnosis was based on the mother's repetition of the complainant's statements, the trial judge erred in allowing the doctor to testify about her diagnosis. This argument is meritless because the doctor's testimony that the mother said the child had been sexually abused was admissible. Furthermore, the doctor's diagnosis was informed as well by her physical examination of the complainant, the complainant's conduct and appearance, and the doctor's previous knowledge of the complainant, whom she had seen before. *Cf. In re Melton*, 597 A.2d 892, 900–02 (D.C.1991) (en banc) (citations omitted).

Accordingly, we affirm the judgment of conviction.

12. *Renville, supra*, 779 F.2d 430, concerned a complainant's statement of the identity of her abuser, where the abuser was a member of the same household. *See id.* at 437, 438, 436. An analogous situation exists in the instant case, where the complainant and appellant lived in adjoining apartments, appellant was married to the sister of the complainant's mother, and appellant acted as an immediate family member. The court in *Renville* also noted that one can be sure that the declarant is motivated by the desire for treatment "where the physician makes clear to the victim that the inquiry into the identity of the abuser is important to diagnosis and treatment, and the victim manifests such an understanding." *Renville, supra*, 779 F.2d at 438 (citing *Iron Shell, supra*, 633 F.2d at 83–84). In the instant case, although the doctor did not testify that she told the mother that all information would be used to facilitate treatment, there is nothing to indicate that the mother was making the statements for any purpose other than obtaining appropriate treatment for her daughter.

13. *See Sherrod v. United States*, 478 A.2d 644, 660–61 (D.C.1984); *Sullivan, supra*, 404 A.2d at 159; *cf. Carr v. United States*, 585 A.2d 158, 162 n. 3, 161 (D.C.1991).