**Otis M. JONES, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 00–CF–1109.**

District of Columbia Court of Appeals.

Argued Nov. 21, 2002.

Decided Dec. 31, 2002.

Ian A. Williams, appointed by the court, with whom Kyle A. McGonigal was on the brief, Washington, for appellant.

Denise M. Clark, with whom Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Elizabeth Trosman, and Ryan H. Rainey, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and REID and GLICKMAN, Associate Judges.

REID, Associate Judge.

Appellant Otis M. Jones was convicted of first-degree cruelty to children, in violation of D.C.Code § 22–901(a) (1996), recodified at § 22–1101(a) (2001); and second-degree cruelty to children, in violation of § 22–901(b), recodified at § 22–1101(b).[1] He contends on appeal that the trial court: (1) improperly instructed the jury on the offense of cruelty to children by failing to include malice as an element of the offense; and (2) committed reversible error by admitting hearsay statements made by his son, under the medical diagnosis exception to the hearsay rule. We hold that the

trial court did not err, let alone plainly err in instructing the jury as to the statutory offenses of first- and second-degree cruelty to children, because malice is not an element of the current cruelty to children statute; rather, to satisfy the *mens rea* requirement, the government need only show that a defendant acted "intentionally, knowingly or recklessly." We further reaffirm our prior holding that the government is not required to show malice in order to defeat the parental discipline defense to the charge of cruelty to children. Finally, we conclude that the trial judge did not err in admitting the statements T.J. made at the hospital because those statements fell within the medical diagnosis and treatment exception to the hearsay rule.

**FACTUAL SUMMARY**

The government's evidence presented at trial showed that Mr. Jones decided to discipline his ten-year-old son, T.J., on October 12, 1999, because of behavioral problems at school. After his girlfriend, with whom he and his son lived, left their residence, Mr. Jones secured his son's hands with duct tape and, as he put it during his testimony at trial, "whooped" him. T.J. defecated on himself. After beating T.J., Mr. Jones took pictures of him in the nude and threatened to embarrass T.J. by sending the pictures to T.J.'s school. When his girlfriend returned to the apartment, she smelled feces as she entered, and Mr. Jones showed her the pictures he had taken of T.J. T.J. complained of a bruise on his arm.

The following day, T.J. went to school, and from there was taken to the Children's National Medical Center. There he was

1. The trial court granted Mr. Jones' motion for judgment of acquittal on an aggravated assault charge; and the jury acquitted him of
assault with a dangerous weapon (scrub brush).

seen by Dr. Christina Johns, an Emergency Department physician. T.J. told Dr. Johns "that his father tied his hands with tape and hit him with a wire brush." He was hit "a lot" of times. Based on a medico-legal form that had been completed while T.J. was at the hospital, Dr. Johns testified that T.J. "had multiple contusions, multiple bruises, in scattered places on his body," including a bruise on his face, and contusions on his right shoulder and right thigh. There were "red and purple marks, 8 by 10 centimeters, and contusions" on his buttocks, and broken skin, or a laceration, also on his buttocks. In addition, Dr. Johns saw what appeared to be "pieces or remnants of gray tape" on the arms or wrists of T.J. T.J.'s injuries were treated with ice, Motrin, Tylenol, and "some local wound dressing." Detective Kimberly Mason–Robinson, who carried T.J. to the hospital, viewed his injuries at the hospital and photographed them.

The trial testimony of Mr. Jones was consistent in material respects with the statements Dr. Johns took from T.J. Mr. Jones admitted that he "grabbed a scrub brush," "bonded [T.J.'s] hands together . . . and then spanked him on his behind."

He acknowledged hitting T.J. at least 10 or 12 times and admitted that it was "possible but not likely" that T.J. "was hit more than 12 times."

## ANALYSIS

Mr. Jones first contends that the trial court failed to instruct the jury that "the government must prove . . . that the defendant acted with 'malice' or out of a desire to inflict pain rather than out of genuine effort to correct [T.J.] . . . ." The government maintains that the trial court's instructions were correct, based on the version of the statute under which Mr. Jones was charged.[2]

■ Because Mr. Jones' contention was not raised in the trial court, we review it for plain error. *See Coates v. United States,* 705 A.2d 1100, 1104 (D.C.1998); *see also United States v. Olano,* 507 U.S. 725, 731–32, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *Wilson v. United States,* 785 A.2d 321, 326–27 (D.C.2001). "Under the plain error standard, '[t]he error must be: (1) obvious or readily apparent, and clear under current law; and (2) so clearly prejudi-

---

2. D.C.Code § 22–1101, the statute under which Mr. Jones was charged, provides:
    (a) A person commits the crime of cruelty to children in the first degree if that person intentionally, knowingly, or recklessly tortures, beats or otherwise willfully maltreats a child under 18 years of age or engages in conduct which creates a grave risk of bodily injury to a child, and thereby causes bodily injury.
    (b) A person commits the crime of cruelty to children in the second degree if that person intentionally, knowingly, or recklessly:
    (1) Maltreats a child or engages in conduct which causes a grave risk of bodily injury to a child; or
    (2) Exposes a child, or aids and abets in exposing a child in any highway, street, field house, outhouse or other place, with intent to abandon the child.

    (c)(1) Any person convicted of cruelty to children in the first degree shall be fined not more than $10,000 or be imprisoned not more than 15 years, or both.
    (2) Any person convicted of cruelty to children in the second degree shall be fined not more than $10,000 or be imprisoned not more than 10 years, or both.
Prior to its 1994 amendment, the statute read in relevant part:
    Any person who shall . . . cruelly beat, abuse, or otherwise wilfully maltreat any child under the age of 18 years; . . . shall be deemed guilty of a misdemeanor, and, when convicted thereof, shall be subject to punishment by a fine of not more than $250, or by imprisonment for a term not exceeding 2 years, or both.
D.C.Code § 22–901 (1993).

cial to substantial rights as to jeopardize the very fairness and integrity of the trial.'" *Coates, supra,* 705 A.2d at 1104 (citations omitted).

■ In this case, Mr. Jones was charged under a revised cruelty to children statute which divided this crime into two degrees—first- and second-degree cruelty to children, neither of which requires proof of malice. Rather, to prove the *mens rea* requirement of the revised statute, the prosecutor need only show that a defendant committed the offenses "intentionally, knowingly or recklessly." D.C.Code § 22–1101.

In citing *Carson v. United States,* 556 A.2d 1076 (D.C.1989), Mr. Jones confounds the old version of the statute with the new one. Since no *mens rea* standard was set forth in the prior version, *Carson, supra,* looked, in part, to the common law and "conclud[ed] that the offense ... require[d] a showing of malice." *Id.* at 1078. In discussing malice in that case, we said, in part: "[A] parent acts with malice when a parent acts out of a desire to inflict pain rather than out of genuine effort to correct the child, or when the parent, in a genuine effort to correct the child, acts with a conscious disregard that serious harm will

result." *Id.* at 1079. Our decision in *Newby v. United States,* 797 A.2d 1233 (D.C. 2002), signaled that "[m]alice may or may not continue to be an element of cruelty to children ...." *Id.* at 1241. However, we did not resolve in that case the issue of whether malice is an element of the current cruelty to children statute.

■ We now hold that malice is not an element of the 1994 amended version of the cruelty to children statute, D.C.Code § 22–1101; rather, the government need only show that a defendant acted "intentionally, knowingly, or recklessly." *See Gerald Smith v. United States,* 813 A.2d 216 (D.C. 2002). We also reaffirm our holding in *Newby, supra,* "that the government [is] not required to prove malice in order to rebut appellant's assertion of the parental discipline defense." *Id.* at 1245.[3]

■ Furthermore, under our standard of review, we are satisfied that the trial court did not err, let alone plainly err in instructing the jury as to the *mens rea* element of D.C.Code § 22–1101.[4] The trial judge stated:

Intentionally or knowingly means that the defendant acted voluntarily and on

3. In reaching this conclusion, we stated, in part:

[W]e would not choose to follow the minority of courts that "hold that in the absence of malice, parents [have] almost unfettered discretion to physically dominate their children...." A malice standard for the parental discipline defense also would run counter to the public policy reflected in the child neglect and abuse law of the District .... Constitutionally protected parental prerogatives are sufficiently respected in a criminal assault prosecution by requiring the government to overcome the parental discipline defense beyond a reasonable doubt—by proving either that the punishment was unreasonable or that it was not genuinely disciplinary—without also requiring the gov-

ernment to prove that the parent acted with malice toward the child.
*Newby, supra,* 797 A.2d at 1243–44.

4. Mr. Jones made neither a general nor a specific objection to the trial court's instruction concerning D.C.Code § 22–1101. In fact, the only question as to the instruction came from the prosecutor who pointed out that the original charge to the jury included a section of the statute under which Mr. Jones was not charged. The trial judge corrected the instruction accordingly. Objections to jury instructions must be made with specificity. *See Russell v. United States,* 698 A.2d 1007 (D.C.1997); *see also Hicks v. United States,* 707 A.2d 1301, 1305 (D.C.1998); Super. Ct.Crim. R. 30.

purpose, not by mistake or accident. Recklessly means that the defendant was aware of and disregarded the grave risk of bodily harm created by his conduct.

This precise instruction is set forth in CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.13 (4th ed. 1996 Supp.). Moreover, the definition of "intentionally or knowingly" which appears in jury instruction No. 4.13 is consistent with our determination in *Campos v. United States*, 617 A.2d 185 (D.C.1992), that "intentionally or knowingly" refers to an act that "was deliberate or on purpose, not accidental," *id.* at 189; *see Schafer v. United States*, 656 A.2d 1185, 1188 n. 9 (D.C.1995) (" 'An act is done knowingly if done voluntarily and purposely, and not because of mistake, inadvertence or accident.' ") (quoting *United States v. Kleinbart*, 307 U.S.App.D.C. 136, 142, 27 F.3d 586, 592 (1994)). Similarly, the definition of recklessness in jury instruction No. 4.13 is consistent with the usual meaning of that term. *See, e.g., Thompson v. United States*, 690 A.2d 479, 483 (D.C.1997) ("[A] defendant is ... 'reckless' only if he intentionally does an act with a willful disregard of its potential consequences."); *cf.* Model Penal Code § 2.02(2)(c), quoted in the commentary to jury instruction No. 4.13: "A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct."

In short, the plain meaning of the words "intentionally, knowingly, or recklessly," as used in § 22–1101, does not connote "malice" or "evil intent." [5] *See Rider v. United States*, 687 A.2d 1348, 1352 (D.C.1996) ("In examining statutory language, 'the words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them.' ") (quoting *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc)). Since the trial court's instruction as to D.C.Code § 22–1101 reflected the "ordinary sense" of "intentionally, knowingly, or recklessly," and "the meaning commonly attributed to them," we detect no error, let alone plain error, with respect to that instruction.

As his second contention, Mr. Jones asserts that the trial court improperly permitted the government to introduce hearsay statements attributed to his son, T.J., because they "were not made ... for the purpose of obtaining medical treatment or diagnosis that would facilitate effective medical treatment," but "were made for the purpose of examination and/or investigation of suspected child abuse." The record reveals that this specific argument was not made in the trial court.

Prior to examining Dr. Johns, the prosecutor made the following proffer:

[T]he proffer is on the back of the medicolegal form. Except for the part of dropping him on his head that the government agreed not to bring out, it is [that the] father tied [T.J.'s] arms behind his back with duct tape and hit him with a wire—hit him with a wire brush

---

5. Section 22–1101 is in contrast to the State of Georgia cruelty to children in the first degree statute which specifically includes the word "malicious" ("Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental main"), Official Code of Georgia Annotated, § 16–5–70 (2002); *see also Alexander v. The State*, 274 Ga. 787, 561 S.E.2d 64 (Ga.2002). In addition, the child abuse statute for the State of Maryland contains the term, "malicious act." *See* Md. Ann. Code, Art. 27, § 35A (1996 Repl.); *State of Maryland v. Taylor*, 347 Md. 363, 701 A.2d 389 (Md.1997).

all over his body, stomach, buttocks, arms. Hit him more than 20 times. Took pictures of him using the bathroom naked .... He hit him in the past. Also hit him with a belt Friday and hits him once a month with a belt or brush.

In response, defense counsel "object[ed] to anything that was said after she observed him and looked at him." He added, "what I believe [the prosecutor] is trying to [do is] to bring in these statements as hearsay in that they were used to help the doctor determine the treatment. So I would like to ascertain whether or not this statement was taken from the child, whether it was taken from someone else, when it was given to the doctor." The government responded: "The proffer is ... that she takes a complete history ... [f]rom the child. That she uses that history to diagnose and treat [hi]m." Defense counsel made no response to the government's proffer.[6]

▇▇▇ The government contends that Mr. Jones did not preserve in the trial court the specific objection to the admissibility of T.J.'s statements through Dr. Johns that he now presents to this court, and thus, our review is governed by the plain error standard. "It is settled ... that a party objecting to evidence must make known to the court and opposing party the specific portion of the testimony that is objectionable and the precise ground on which the party is basing his objection." *Williamson v. United States,* 445 A.2d 975, 980 n. 5 (D.C.1982). Fur-

thermore, "[g]rounds not raised in trial court will not require reversal on appeal, absent 'plain error.'" *Id.* (citations omitted). *See Hunter v. United States,* 606 A.2d 139, 144 (D.C.(1992) ("If the point was not preserved ..., we review for plain error."); *Newby, supra,* 797 A.2d at 1237 n. 1 (If an appellant demonstrates trial court error that is "'plain'" and "'affects substantial rights ... an appellate court may then exercise its discretion to notice a forfeited error, but only if [ ] the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'") (quoting *Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)).

▇▇▇ Even assuming that Mr. Jones preserved his objection, we are satisfied that admission of Dr. Johns' testimony as to what T.J. stated in explaining the causes of his injury while he sought medical treatment did not constitute error. This jurisdiction recognizes the medical diagnosis and treatment exception to the hearsay rule. In *Galindo v. United States,* 630 A.2d 202 (D.C.1993), we said: "Under the medical diagnosis exception to the hearsay rule, statements made by a patient for purposes of obtaining medical treatment are admissible for their truth because the law is willing to assume that a declarant seeking medical help will speak truthfully to medical personnel." *Id.* at 210 (citation omitted). We rejected as "unpersuasive" "[a]ppellant's suggestion that

---

**6.** Defense counsel later objected to the trial court qualifying Dr. Johns "as an expert in child abuse." The trial court qualified Dr. Johns "as an expert in diagnosis of injuries received by children." When the trial court asked whether there was any objection to introduction into evidence of the medico-legal form, defense counsel replied: "Well, as long as I get a chance to look at the redacted form prior to that." No general or specific objection was made to the form. Earlier, defense

counsel objected to a question concerning "how many times [T.J.] was hit by his father." The trial court overruled the objection, and defense counsel declared: "She answered the question earlier when asked." In addition, defense counsel objected on the ground of lack of foundation when the prosecutor sought to determine, "how hard somebody would have to strike the child to receive the[ ] kinds of injuries [found on T.J.]."

the visit to the doctor was prompted by legal rather than treatment incentives...." *Id.* We "recognized that statements [made to a doctor] about the cause of injuries fall within the medical diagnosis exception to the hearsay rule because explaining the cause of injuries may facilitate treatment." *Id.* Similarly, "statements in a complainant's hospital records about the injured party's explanation of the cause of the injury" fall within the exception. *Id.;* see *Barrera v. Wilson*, 668 A.2d 871 (D.C. 1995). And, the statements attributed to the victim seeking medical treatment relating to the "psychological and emotional consequences" of the abuse, as well as the physical injuries, may also be admitted under the medical diagnosis and treatment exception to the hearsay rule. *See Galindo, supra*, 630 A.2d at 210.

T.J.'s statements that his "father tied [his] arms behind his back with duct tape and ... hit him with a wire brush all over his body, stomach, buttocks, arms ... [and that] [h]e hit him in the past ..." all fall within the medical diagnosis and treatment exception to the hearsay rule. Therefore, the trial court committed no error in admitting these statements into evidence through the testimony of Dr. Johns.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*