*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CM-0953

KEVIN E. JONES, JR., APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2017-CMD-015669)

(Hon. Patricia A. Broderick, Trial Judge)

(Submitted December 11, 2019                    Decided May 4, 2023)

*Jesse I. Winograd* for appellant.

*Jessie K. Liu*, United States Attorney at the time of submission, and *Elizabeth Trosman, Suzanne Grealy Curt, Amy Joy Thomas*, and *Allessandra Stewart*, Assistant United States Attorneys at the time, were on the brief for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, MCLEESE, *Associate Judge*, and THOMPSON,[*] *Senior Judge*

---

[*] Judge Thompson was an Associate Judge of the court at the time of submission. She began her service as a Senior Judge on February 18, 2022.

THOMPSON, *Senior Judge*: Following a bench trial, appellant Kevin E. Jones, Jr., was convicted of one count of simple assault, based on an allegation that he kissed an eight-month-old infant, L.T.C., on the lips while the child was in day care. He argues in this appeal that (1) the evidence was insufficient to support the conviction, (2) the trial court failed to ascertain the competence of the child witness who was the government's key witness, and (3) the court abused its discretion in denying the defense's request to compel production of the witness's school records before trial. For the following reasons, we vacate appellant's conviction and remand for additional findings by the trial court.

## I.

Appellant was charged by information on September 13, 2017, with one count of simple assault, in violation of D.C. Code § 22-404(a). His bench trial took place on July 10, 2018. The government called two witnesses, the first of whom was L.T.C.'s mother, who testified that appellant is the son of Doris (Haney), the operator of the day care home in which her infant child L.T.C. had been enrolled since February 2017. L.T.C.'s mother testified that she expected

appellant to hold L.T.C. and to provide care to him if he was crying, but that she did not give appellant permission to do "anything else" by way of touching L.T.C.

The government's other witness was K.P., who was eleven years old at the time of appellant's trial and ten years old at the time of the (August 2017) charged incident. K.P. testified that she was assisting in the basement of the day care at Doris Haney's house when she witnessed appellant come to the basement, where L.T.C. and K.P. were, pick up L.T.C. and kiss the child on the lips, and then put the child back down.[1] K.P. testified that she responded by wiping the baby's mouth with a wipe because she felt that what had occurred was "nasty." L.T.C. did not cry when appellant kissed him. K.P testified that she did not tell Ms. Haney about the kiss when Ms. Haney came back to the basement, did not tell her own mother or Ms. Haney that day or the next day, and did not tell anyone else that appellant had put his tongue in L.T.C.'s mouth. She thought that the incident "wasn't that big of a deal." K.P. further testified that she did not remember telling interviewers (the "ladies in the room" from the Child Advocacy Center) that appellant used his tongue and moved his head up and down while kissing L.T.C., or that appellant's mouth was open, or that his tongue was moving at the time, but

---

[1] Before appellant picked up L.T.C. and kissed him, K.P. had been on the floor with L.T.C., playing with him and tickling him.

she agreed that she told the interviewers that appellant "used his lips and maybe his tongue." Her trial testimony was that appellant "just used his lips."

The trial court denied appellant's motion for judgment of acquittal, remarking that L.T.C. "was not asking to be kissed." The defense then called Ms. Haney, who testified that appellant's job at the day care was "mostly to watch [the] children" from the basement steps "when [K.P.] was around." Ms. Haney told the court that the allegation that appellant kissed L.T.C. surfaced only after she (Haney) confronted K.P. (on the day of the alleged kiss) about ordering pay-per-view shows on Haney's basement television without Haney's permission, and after appellant reported to Haney the same day, in K.P.'s presence, that K.P. had hit one of the children — a report that prompted Haney to scold K.P. After these incidents, Haney would no longer allow K.P. to come to the day care center to assist with the children — work for which Haney had been paying K.P. $25 per week. The defense argued that K.P. was biased.

In announcing its verdict, the trial court credited K.P.'s testimony. The court found appellant guilty of "simple assault, not any kind of sexual things," reasoning that "[a] child doesn't have the ability to consent." The court stated, "it's simple assault, which is an offense of touching, not necessarily sexual." The

court remarked that while appellant's conduct was not "the crime of the century," it was nonetheless "concerning."[2]

This appeal followed. After initial briefing, and at the government's request, we stayed this matter pending a decision by this court in *Perez Hernandez v. United States*, No. 15-CM-130. This court's en banc opinion in that case was issued on December 29, 2022, *see Perez Hernandez v. United States*, 286 A.3d 990 (D.C. 2022) (en banc). We have the parties' supplemental briefs, and the instant matter is now ripe for resolution.

## II.

### A. Sufficiency of the Evidence

---

[2] Before sentencing appellant, the court heard a victim impact statement from L.T.C.'s mother, in which the mother stated that L.T.C. was "violated." The prosecutor argued in closing that appellant's conduct was "bizarre and quite disturbing."

Appellant argues that there was insufficient evidence to support his conviction for simple assault. He asserts that the government failed to prove that he injured or intended to injure anyone. He acknowledges that non-consensual sexual touching can constitute assault, but argues that the trial court's "express finding" that his actions "were not sexual in nature" — that his kissing L.T.C. was "not any kind of sexual thing[]" — precluded a conviction on that basis. Appellant emphasizes that there was no evidence that L.T.C. cried or reacted in some other negative way to the kiss or wanted appellant to "cease contact." Appellant argues that L.T.C.'s inability to consent to a sexual touching is irrelevant on this record and highlights that L.T.C.'s mother knew that appellant would interact with L.T.C. as a caregiver. Appellant asserts that even if the relevant question is whether the kiss would have offended a reasonable person, the evidence that K.P. did not immediately report to anyone what occurred shows that she was not offended by appellant's conduct.

Our review of the sufficiency of the evidence is de novo, *see Nero v. United States*, 73 A.3d 153, 157 (D.C. 2013), but in criminal cases generally, "we must view the evidence in the light most favorable to sustaining the judgment." *Davis v. United States*, 834 A.2d 861, 866 (D.C. 2003). We give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to

weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (internal quotation marks omitted). We "must deem the proof of guilt sufficient if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

In our recent en banc decision in *Perez Hernandez*, we confirmed that a non-violent offensive touching "performed with minimal force and not of a sexual nature[] may be a criminal assault." 286 A.3d at 993.[3] We clarified that to prove assault based on offensive touching,

> The government must prove that the defendant (1) touched another; (2) that he did so purposely, not by accident; (3) that the touching offended the other person; (4) that the touching would offend a person's reasonable sense of personal dignity; and (5) that the defendant either acted with the purpose of causing offense *or* acted knowing that the touching would cause offense.

---

[3] Appellant asserts in his supplemental brief that under *Perez Hernandez*, "there is a new way to commit a simple assault in the District of Columbia" and "an entirely new theory of liability." However, as we stated in *Perez Hernandez*, we said and held prior to our opinion in that case that "a nonviolent offensive touching, not of a sexual nature, also constitutes an assault." 286 A.3d at 998. We acknowledged that we "cannot . . . create new crimes, and we[re] not doing so." *Id.* at 996.

*Id.* at 1004 (footnote omitted).  We noted that "[i]n an unusual case, th[e] third element may have to be modified to say 'offended or would have offended,'" explaining, as an example, that "if the victim does not testify but witnesses describe what happened, they may be able to establish that the touch would have offended the victim."  *Id.* at 1004 n.21.  We did not decide in *Perez Hernandez* "whether recklessness will suffice as the mens rea for an offensive touching assault."  *Id.* at 1003.

Here, although the trial court at one point couched its finding about whether there was a sexual touching in terms that at least arguably were less than definitive — it referred to "an offense of touching, not necessarily sexual" — it seems clear that the court did not find beyond a reasonable doubt that appellant was guilty of sexual touching of L.T.C.  We therefore focus on whether the evidence was sufficient to support the court's verdict that appellant committed a non-sexual offensive touching of L.T.C. when he kissed L.T.C. on the lips without consent.

As noted above, appellant emphasizes the lack of evidence that L.T.C. reacted negatively to the kiss and argues that the evidence therefore would not have allowed the court to find, as is required by the third prong of the test

articulated in *Perez Hernandez*, that L.T.C. was offended by the kiss. Appellant also asserts that non-sexual kisses of infants "are a rather routine form of affection" and contends that the trial court could "not discern from the testimony [including K.P.'s '[it] wasn't that big of a deal' testimony] that the touching would offend a person's reasonable sense of [personal] dignity," as required by the fourth prong of the test for non-sexual offensive touching. We conclude that this case, involving a victim who by virtue of his infancy was incapable of appraising the touching, is one of those unusual cases, contemplated in footnote 21 of *Perez Hernandez*, in which the third element of non-sexual offensive touching "may have to be modified" to include a touching that "would have offended" the victim. 286 A.3d at 1004 n.21. Because "evidence about an actual person's response to a situation is . . . sometimes the best evidence available[] of how a reasonable person would have responded," *Andrews v. United States*, 125 A.3d 316, 325 (D.C. 2015) (internal quotation marks omitted), the reaction of one who witnessed appellant's kissing L.T.C. on the lips is relevant. However, we need not decide whether the only relevant perspective or more relevant perspective is that of an ordinary person who witnessed the kiss and was able to appraise it, or that of the infant's parent, because in this case there was evidence of both: the reaction of K.P., who witnessed the kiss, responded by wiping L.T.C.'s mouth with a wipe, testified that the kiss was "nasty," and eventually reported the kiss to adults; and the testimony

by L.T.C.'s mother, who testified that she did not give consent for appellant to touch L.T.C. other than for a caregiving reason.

Moreover, there was no evidence that, at the time appellant kissed L.T.C. on his lips, the child was in distress or in need of stimulation; K.P. testified that she was playing with and tickling L.T.C. at the time. In addition, the trial court heard Ms. Haney's testimony that appellant was not expected to interact with the children, but just to "watch [the] children" from the basement steps when K.P. was in the basement with them and Ms. Haney was upstairs. Thus, there was no evidence of a caregiving reason for appellant's conduct that might have brought it within the scope of the consent given by L.T.C.'s mother. For these reasons, either K.P.'s testimony about her reaction to the kiss or the testimony by L.T.C.'s mother together with the lack of evidence of a caregiving reason for the kiss sufficed to support a finding that the kiss would have offended L.T.C. if he had been able to appraise it.

As to whether the evidence supported a finding that the kiss would have "offend[ed] a person's reasonable sense of personal dignity," *Perez Hernandez*, 286 A.3d at 1004, we conclude that it would have supported such a finding if it

proved "a contact which [was] unwarranted by the social usages prevalent at the time and place at which it [was] inflicted." Restatement (Second) of Torts § 19 cmt. a (Am. L. Inst. 1965).[4] Even if appellant is correct that kisses of infants on their lips "are a rather routine form of affection" sometimes and in some settings, the evidence here was that the expectations of both Ms. Haney as the day care operator and of L.T.C.'s mother in entrusting the child to care rendered appellant's kissing of L.T.C. on his lips beyond what was warranted by social usages at the time and place. We are satisfied that their testimony sufficed to enable the court to find that the kiss would have "offend[ed] a person's reasonable sense of personal dignity." *Perez Hernandez*, 286 A.3d at 1004.

Nevertheless, we are unable to affirm appellant's conviction, because, in its pre-*Perez Hernandez* ruling, the trial court made no findings about prongs three or four or about whether appellant intended to cause offense or knew that kissing the

---

[4] We note that the Court of Appeals of Washington has repeatedly applied the test set out in this comment to the Restatement in upholding convictions for assault. *E.g.*, *State v. Davis*, No. 30319-5-III, 2013 Wash. App. LEXIS 804, at *5 (Wash. Ct. App. Apr. 11, 2013); *State v. Quezada*, No. 26709-1-III, 2009 Wash. App. LEXIS 520, at *6 (Wash. Ct. App. Mar. 5, 2009). This court has recognized that "[o]ver time, the concept of a criminal assault has evolved to incorporate principles from the law of torts." *Perez Hernandez*, 286 A.3d at 997.

child would be offensive.[5]   We conclude that a remand is required for the trial court to determine whether the third, fourth, and fifth prongs of the test articulated in *Perez Hernandez* are satisfied.[6]   *See Augustin v. United States*, 240 A.3d 816, 825 (D.C. 2020) ("The [permissible] inferences are not for this court to draw.").

## B. K.P.'s Competence to Testify

Appellant next contends that the trial court erred in failing to properly assess K.P.'s competence as a witness.  He argues that the court did not make a thorough

---

[5] The court also did not specifically find that appellant kissed L.T.C. purposely and not by accident, but the evidence would not support a finding that he did so inadvertently.

[6] In light of this resolution, we need not address appellant's argument that a conviction under an attempted-battery assault or intent-to-frighten assault theory would constitute a constructive amendment of the charging documents.  We note first that the special, restrictive rules discussed in the case law on which appellant relies — *Zacarias v. United* States, 884 A.2d 83, 86 (D.C. 2005) — apply to constructive amendments of *indictments* and are not applicable in this case, which was charged by information rather than grand-jury indictment.  *See, e.g.*, *Sutton v. United States*, 140 A.3d 1198, 1202 n.4 (D.C. 2016).  And, in any event, the (somewhat skeletal) information charged only that appellant "unlawfully assaulted and threatened L.T.C[.] in a menacing manner."  Appellant has not identified how the facts proven at trial diverge from that allegation, and he makes no claim that he lacked notice of the alleged conduct that the government sought to prove at trial.

attempt to test K.P.'s ability to tell the difference between truth and falsehood, her appreciation of the duty to tell the truth, and her recollection of the event in question. Appellant asserts that K.P.'s responses demonstrated that she did not know the consequences of lying during testimony, that she did not remember certain aspects of the alleged incident, and that she was influenced by previous interviews about the event, all of which, he argues, indicate that she was not a competent witness.

We review this claim only for plain error because appellant made no objection to K.P's competence to testify in the trial court. *Marquez v. United States*, 903 A.2d 815, 817 (D.C. 2006) (per curiam). Thus, appellant can be entitled to relief only if there was (1) error, (2) that is plain, (3) that affected appellant's substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

"A child is a competent witness if she is able to 'recall the events which are the subject of the testimony[,] understand the difference between truth and falsehood[,] and appreciate the duty to tell the truth.'" *Galindo v. United States*, 630 A.2d 202, 206-07 (D.C. 1993) (quoting *Barnes v. United States*, 600 A.2d 821, 823 (D.C. 1991)). A trial court's determination that a child witness is competent to

testify "is a question of law which is committed to its sound discretion." *Barnes*, 600 A.2d at 823. Recognizing that "the trial court has the opportunity to observe the witness'[s] demeanor and conduct at trial," *id.*, we generally will uphold the trial court's determination "unless it is plainly deficient." *Galindo*, 630 A.2d at 206 (internal quotations omitted).

Here, at the start of the government's direct examination of K.P., the prosecutor asked K.P. whether she "kn[e]w the difference between the truth and a lie," to which K.P. responded, "Yes," adding that "[t]he truth is when you're being honest, and a lie is when you're telling a story." The prosecutor then asked her, "[D]o you know what the only rule about testifying is?" K.P. responded, "Always tell the truth." The prosecutor ended that phase of her questioning by asking K.P., "If I were to tell you that we are outside in a park right now, would that be the truth or a lie?" and "[I]f I were to tell you that your shirt is green, would that be the truth or a lie?" K.P. responded that both were lies (her shirt was pink). Asked on cross-examination whether she knew what would happen if she did not tell the truth in court, K.P. responded that she did not know, and she further acknowledged that she had sometimes lied to get herself out of trouble. But defense counsel also elicited K.P.'s agreement that she understood the importance of telling the truth during the

trial. After K.P. had testified, the trial court noted in its findings that K.P. "was very good about what she remembered and didn't remember."

Our review of the record satisfies us that the questioning adequately tested, and that K.P.'s responses adequately evinced, her competence as a witness. We discern no plain error in the trial court allowing K.P. to testify.

### C. K.P.'s School Records

Prior to trial, appellant filed a motion for an order or subpoena to obtain K.P.'s school records (the "Motion to Obtain School Records"). In the motion, appellant asserted that the school records would help him challenge K.P.'s credibility at trial should the records reveal a history of "poor behavior or disciplinary problems" that suggest a tendency towards "fabrication or exaggeration." The trial court denied the motion without a hearing. Nevertheless, appellant served a subpoena *duces tecum* for K.P.'s school records. Counsel for K.P. filed a motion to quash the subpoena, and the trial court granted the motion, ordering that appellant not subpoena any of K.P.'s educational records again without the court's prior approval.

Appellant argues that the trial court erred in denying him access to K.P.'s school records. We review for abuse of discretion the trial court's denial of appellant's Motion for School Records and the court's grant of K.P.'s motion to quash appellant's subpoena of her school records. *See Tyer v. United States*, 912 A.2d 1150, 1156 (D.C. 2006); *Barrera v. United States*, 599 A.2d 1119, 1126 (D.C. 1991).

Generally, to obtain a subpoena *duces tecum* for documents, "a party must show (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable . . . by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production . . . and (4) that the application is made in good faith and is not intended as a 'fishing expedition.'" *Tyer*, 912 A.2d at 1156 (quoting *Brown v. United States*, 567 A.2d 426, 428 (D.C. 1989)). This court has described obtaining "private school records" as an "extreme step" that "may not be taken 'without a compelling and detailed demonstration of need.'" *Barrera*, 599 A.2d at 1126 (quoting *Davis v. United States*, 315 A.2d 157, 162 (D.C. 1974)).

Appellant has not met that standard. Appellant argues that the documents were relevant because they may have shown that K.P. had a history of lying to

people in places of authority or had a disciplinary record. The motion asserted that appellant's family had information from K.P.'s family about K.P.'s behavior in school,[7] but the motion stated no basis for believing that K.P.'s school records would reflect a history of lying. As such, it seems appellant's request was intended as a "fishing expedition." Furthermore, in *Barrera*, we determined that a counsel's "vague reference[]" to "inappropriate behavior" falls "far short of a detailed demonstration of need." *Id.* at 1127 (internal quotations omitted). Here, appellant's motion was similarly vague, stating that he had been informed about "behavioral problems that the witness was having at school," which he asserted could undermine the witness's "credibility as it relates to her version of the facts" about which she was being called to testify. Because appellant failed to make a "compelling and detailed demonstration of need," *id.* at 1126, and because it appears that the documents were sought as part of a "fishing expedition," we conclude that the trial court did not abuse its discretion in denying appellant access to K.P.'s school records.

---

[7] The motion referred to "C.W." rather than "K.P.," but the context as well as the subpoena itself and the related correspondence make clear that the discussion was about the school records of K.P. (whose first name is a name sometimes spelled with a "C").

## III.

For the foregoing reasons, the judgment of conviction is vacated and the matter remanded for further proceedings.

*So ordered*.